R. E. EVETT, Respondent,

v.

Homer CORBIN, Jr., Appellant.

No. 45816.

Supreme Court of Missouri,
Division No. 2.

Oct. 14, 1957.

Blanton & Blanton, Sikeston, for appellant.

McHaney & McHaney, Kennett, Ward & Reeves, Caruthersville, for respondent.

STORCKMAN, Presiding Judge.

This is a suit for personal injuries alleged to have been received when plaintiff was struck by an automobile driven by the

defendant. Plaintiff recovered judgment in the sum of $10,000, from which defendant has appealed. The parties will generally be referred to herein as they were designated in the trial court.

The accident and injuries complained of in this case are the aftermath of a Saturday night's carousal in Hayti, Missouri, participated in by the plaintiff, the defendant, the defendant's sister, Mabel Hattley, and one Ruby Hunter, who was commonly known by her maiden name of Ruby Flannagan. All of the participants were married, but their marital relations appeared to be in various stages of neglect or abandonment. The plaintiff, age 33, the father of five children, worked as an automobile mechanic. The defendant, the father of four children, did fender and body work for an automobile company. Mabel Hattley, 41, had not lived with her husband for four years and had no children. Ruby Flannagan, 36, apparently was somewhat of an itinerant. A native of Alabama, she was sojourning in Hayti at the time in question. Her two children were in California and the whereabouts of her husband were not disclosed.

During the evening of April 2, 1955, at various times between 5:00 and 9:00 o'clock, these four persons forgathered in Sonny's Bar in Hayti. They drank together until the bar closed at midnight, the Saturday night closing time. It is conceded that all of them drank beer and there is evidence that some whiskey and gin were also consumed. When they left the bar they drove to a tourist court in defendant's car, Ruby Flannagan occupying the front seat with defendant, and the plaintiff and Mabel Hattley the rear seat. After an unsuccessful attempt to rent a cabin, they drove to a place in Hayti where two half-pints of whiskey were purchased. The plaintiff and defendant got into an argument about the change to which plaintiff was entitled out of the funds contributed for the purchase of the whiskey, and the defendant ordered the plaintiff and his sister, Mabel Hattley, from

his car. The sister walked away and took no further part in the night's activities. After the plaintiff had walked along the highway a short distance the defendant overtook him and offered to "carry" him home. When plaintiff got back into the automobile the argument erupted again, and again the plaintiff was ordered from defendant's automobile. The plaintiff complied but before leaving the scene he and the defendant "had a little fight beside the car."

The plaintiff claims that thereafter, while he was walking east on East Jefferson Street and within a short distance of his home, the defendant drove up behind him, struck him with the automobile, and drove away without stopping. Plaintiff claims that he was knocked into a ditch and that his right leg was broken and other injuries inflicted. After he had been in the ditch for some 20 to 25 minutes calling for help, police officers arrived and took him to the hospital.

On the other hand, the defendant denies that he struck the plaintiff with his automobile and claims that the last time he saw the plaintiff that night was when plaintiff walked away after the fight. Defendant denied that he was on East Jefferson Street at all that night, and contended that immediately after the fight he and Ruby Flannagan went directly to a tourist court where they rented a cabin and remained together the rest of the night and until about 9:30 the next morning.

The defendant moved for judgment in his favor at the close of the entire case and has preserved for review the trial court's refusal to sustain his motion. Plaintiff pleaded that "the defendant then and there carelessly, negligently and recklessly drove and operated his automobile with great force and violence upon and against plaintiff." The issue of negligence plaintiff submitted to the jury was whether the defendant "negligently failed to exercise the highest degree of care, if so, in that he negligently and carelessly failed to keep a lookout for pedestrians upon the said street at said

time and place, if you so find, and that as a direct result thereof the automobile driven by defendant was caused to collide with plaintiff and injure him." Our inquiry as to the sufficiency of the evidence is limited to the factual questions actually submitted to the jury. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 95 [4, 5]; Bean v. St. Louis Public Service Co., Mo. App., 233 S.W.2d 782, 785 [3, 4].

■ The first phase of the question presented under this allegation of error is whether there is substantial evidence that the plaintiff was struck by an automobile driven by the defendant. On this score, the plaintiff testified that after the fight "I started on home, and when I turned to go home I got in two houses of home there and he came along and run over me." There were no sidewalks at this point on East Jefferson Street, and he was walking in the roadway near the right-hand side. The plaintiff then gave this testimony: "Q. And, now, tell the jury just exactly what happened when you were walking along there. A. Well, I was walking along and I heard something behind me, and he come up on me with his lights off. I seen him coming and jumped to the right, and when I did I didn't get off far enough and he hit me and knocked me off in a ditch of water. I was conscious then, but after the car was moving on I looked and saw who it was— Q. What do you mean, you saw who it was? A. Saw Corbin. Q. Who was driving that car that hit you? A. Homer Corbin."

The testimony of plaintiff's wife tended to corroborate plaintiff in some particulars. She testified that when her husband hadn't returned at 12:00 o'clock she "got up and stood at the door most of the time waiting for him." She testified that about 1:30 she saw the defendant's car pass her home going east on East Jefferson. It was a bright moonlight night and there was a street light "up the street a few yards." When she first saw the defendant's automobile it was "about three houses down." The

place where her husband got hurt was "about the same distance, maybe a little further down" from their house. The automobile had its lights on dim. She saw two people in the front seat of the automobile and thought one of them was a woman, but she could not identify the defendant as one of the occupants. The car was not going very fast when she saw it. It sounded like it was in low gear. Before she saw the automobile she had heard an unusual noise "from that direction." It sounded like "a dull thud" and "about a half a block" away. She did not see her husband struck and, in fact, did not learn that he had been injured until about 3:30 Sunday morning.

The defendant has directed our attention to evidence which casts grave doubt upon the credibility of the plaintiff and other of his witnesses. The difficulty of getting at the truth under the circumstances in evidence is readily apparent. However, the defendant's contention falls under the "old familiar rule" that the jury is the judge of the credibility of the witnesses and the weight to be given to their testimony, and the court has no authority to interfere with this prerogative. Lafferty v. Kansas City Casualty Co., 287 Mo. 555, 229 S.W. 750, 753 [5]; Higgins v. Terminal R. R. Ass'n, 362 Mo. 264, 241 S.W.2d 380, 384 [1, 4]; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559–560 [3–5]. Plaintiff's evidence directly and positively identifying the defendant as the author of his injuries was not destroyed by the other evidence in the case. Such identification was more than a scintilla of evidence. It was substantial in that it was "evidence which, if true, would have probative force upon the issues." Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 752 [16]; Collins v. Division of Welfare, 364 Mo. 1032, 270 S.W.2d 817, 820 [6].

The defendant relies upon Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511; McKissick v. Interstate Transit Lines, Mo.App., 201 S.W.2d 189; Helton v. Huckeba, 241 Mo.App. 786, 270 S.W.2d 486; Shade v. Brinkopf, Mo.App., 119 S.W.2d

444. We note, however, Helton v. Huckeba was transferred to the supreme court where plaintiff's judgment was affirmed. See 276 S.W.2d 78, 84 [6]. In the other cases the evidence necessary to make a submissible case was wholly lacking. They furnish no authority for disregarding the direct evidence in this record.

■ Further, the defendant asserts that the record in this case is utterly devoid of any proof that the plaintiff was injured as a result of the failure of the defendant to keep a lookout. Failure to maintain a lookout was the only specification of negligence submitted to the jury. The defendant, as the operator of a motor vehicle, was under a duty to maintain a lookout ahead and laterally and must be held to have seen what looking would have revealed. Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 545 [4]; Branscum v. Glaser, Mo., 234 S.W.2d 626, 627 [1]. The evidence shows that it was a moonlight night and there was a street light in the vicinity. The photographs in evidence indicate that the street was level and the view unobstructed. The lack or insufficiency of lights on defendant's automobile may be considered as evidentiary facts bearing on the issue of defendant's failure to keep a lookout. This, and the other evidence in the case, made a submissible issue on the failure of defendant to maintain the lookout required by law. A case so holding and almost identical as to the manner of the occurrence is Lenz v. Seibert, Mo.App., 259 S.W. 829, 831 [1]. See also Schrader v. Burkel, Mo., 260 S.W. 63, 64 [2]; Ferdente v. St. Louis Public Service Co., Mo., 247 S.W.2d 773, 777–778 [4]; and Block v. Rackers, Mo., 256 S.W.2d 760, 763 [3].

■ The defendant also urges that although the plaintiff pleaded negligence as the basis of his recovery, he tried his case on an entirely different theory, namely, that the defendant intentionally struck the plaintiff with his automobile. Although negligent acts and willful and intentional acts are distinguishable, they are not necessarily repugnant. Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 549–550 [3]; Miller v. Harpster, 273 Mo. 605, 201 S.W. 854, 856 [2]. In the Miller case the court held that an allegation in plaintiff's petition that the injuries were willfully and maliciously inflicted did not absorb and destroy the charges of negligence where the defendant did not seek a reformation of the petition or an election as to rival theories. In discussing defendant's contention that no submissible case was made, this court said, 201 S.W. loc. cit. 856: "The same principle carried to its logical conclusion would lead to the result that every action for negligent wrong could be defeated by a showing that there lurked inside the brain of the wrongdoer the secret intention to perpetrate the act. To avoid this the common law permitted the injured party to waive the intent, and rely upon the neglect." In support of this portion of the opinion Shearman & Redfield on Negligence is cited, which, in the 6th Ed., § 1a, states: " * * * in a civil action for damages it generally rests with the person injured by intentional wrongdoing to elect to treat the injury as negligently inflicted. In such case he is said to waive the intent and rely on the neglect."

The petition, as originally drawn and as amended, does not charge a willful or intentional tort. It does not seek punitive damages. The issue submitted to the jury was whether the defendant "negligently and carelessly failed to keep a lookout for pedestrians upon the street." Both the cause of action pleaded and the issue submitted were based on negligence.

There was no direct evidence that the defendant struck the plaintiff intentionally. The only evidence that might be construed as an attempt to prove a willful tort is the statement alleged to have been made by the defendant when the plaintiff got out of the automobile the last time. The plaintiff testified: "He [meaning the defendant] said him and Red were going to work me over a little before I got home."

(Red was a nickname of Ruby Flannagan.) Even if this statement is construed to mean that the defendant intended to strike the plaintiff with the automobile, we do not think that it or the other evidence in the case is so repugnant and inconsistent as to destroy the other permissible inference that the accident and injury was caused by the negligent failure of the defendant to keep a lookout for pedestrians on the street.

■ The submission of negligence constituted an abandonment of other theories of recovery not submitted. Nevertheless, plaintiff's counsel in argument charged on several occasions that the defendant deliberately ran down and injured the plaintiff. This line of argument, which may have been improper in these circumstances, was not objected to and certainly could not have the effect of converting the action into one for an intentional tort contrary to the instruction submitting simple negligence.

The remaining points relied on are all more or less related to the assignment that the court erred in permitting the plaintiff to amend his petition after judgment so as to include a charge of negligent failure to maintain a proper lookout. The essence of these remaining questions is that the case was erroneously submitted upon a ground of negligence not pleaded. For these reasons the defendant maintains his motion for new trial should be granted if the case is not reversed outright. In the view we take of the case, the consideration of the elements necessary to determine whether it was proper to permit the amendment to the petition will dispose of the related points.

As previously noted, the original petition was quite brief and merely charged that "the defendant then and there carelessly, negligently and recklessly drove and operated his automobile with great force and violence upon and against plaintiff." The defendant's answer was a general denial. Plaintiff submitted his case to the jury on the ground that defendant "negligently and carelessly failed to keep a lookout for pedestrians upon the said street at said time and place." The trial was had and the verdict and judgment rendered on April 25, 1956. The defendant filed his motion for a directed verdict or, in the alternative, for a new trial, on April 27, 1956, which motion was argued by counsel for the respective parties on June 25, 1956. Thereafter, on July 12, 1956, plaintiff filed his motion "for leave to amend his petition after judgment, pursuant to Section 509.500 RSMo 1949, V.A.M.S., to cause the pleadings to conform to the evidence offered at the trial" by inserting an additional paragraph charging that the defendant "negligently and carelessly failed to keep a lookout for pedestrians upon said street at said time and place." On July 23, 1956, the court sustained plaintiff's motion to amend his petition and then overruled defendant's motion for judgment or, in the alternative, for a new trial. The defendant contends that under these circumstances "the plaintiff ought not be permitted to amend petition to incorporate a new ground of specific negligence which the defendant had not been called upon to meet during the trial, and which called for different proof." The cases cited by defendant in support of this contention were all decided before the adoption of section 509.500, as a part of General Code of Civil Procedure, Laws of Mo.1943, pp. 353, 378, and therefore are of little help in construing the more liberal practice under the present statute.

The subject matter seems to come squarely within the purview of section 509.500, RSMo 1949, V.A.M.S., dealing with the amendment of pleadings to conform to the evidence. The section provides "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In such case, even without amendment the pleadings are treated as conforming to the proof. Dickerson v.

Terminal R. R. Ass'n, Mo., 284 S.W.2d 568, 571 [5].

 Implied consent to the trial of issues not raised by the pleadings may be inferred from inaction or silence as well as from affirmative actions. State v. Stanfield, Mo., 1 S.W.2d 834. We find no objection in the record to the scope of the evidence or that the issue submitted was not within the pleadings. Specification 5 of defendant's motion for new trial was that there was no evidence to support the verdict "upon the only ground alleged in the plaintiff's instruction, namely, failure to keep a lookout for pedestrians." Because of section 509.500, this court has held that where no objection has been made to the petition or the scope of the evidence, and there is evidence to support the issue submitted, the appellant will not be heard to complain that such issue was not raised by the pleadings. Winters v. Terminal R. R. Ass'n, 363 Mo. 606, 252 S.W.2d 380, 387 [9]; Evinger v. Thompson, 364 Mo. 658, 265 S.W.2d 726, 733 [14]; Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W. 2d 69, 71 [1]. The defendant asserts that pleadings should be construed to prevent a party from being misled, but makes no showing, as contemplated by section 509.500, of any particular in which he has been misled or prejudiced in presenting his defense on the merits. The nature of the defense was such that we are unable to see how the defendant's proof could have been different if the issue submitted had been pleaded in the original petition.

 By the express provisions of section 509.500, the court had jurisdiction to permit the amendment "upon motion of any party at any time, even after judgment," and we find no abuse of the court's discretion in permitting it to be made. Labaddie Bottoms River Protection Dist. v. Randall, 348 Mo. 867, 156 S.W.2d 713, 720 [9]. See also the recent case of Union Electric Co. v. Levin, Mo.App., 304 S.W. 2d 478, wherein the St. Louis Court of Appeals held it an abuse of discretion for the trial court to refuse to permit an amendment to the petition in a condemnation case after judgment of condemnation had been awarded and during the trial on the issue of damages.

Questions briefed as to the nature of the negligence originally pleaded need not be further considered in view of the conclusion reached. It is immaterial whether the petition originally charged general or specific negligence, because the question of defendant's negligence as originally pleaded was not submitted to the jury. If the original charge was, in fact, general negligence, then it was restricted by the amendment to the negligence specifically charged and submitted; if the original charge was specific, then it was abandoned by reason of the submission of the case solely on the charge of negligent failure to maintain a lookout.

The trial court did not err in submitting the case to the jury; nor do the grounds alleged furnish a basis for granting a new trial. Accordingly, the judgment is affirmed.

All concur.