ROBERT GREEN, Respondent, v. JAMES BAXTER GUYNES and O. L. WOODS, Appellants, No. 41822—235 S. W. (2d) 298.

Division Two, January 8, 1951.

608

*Blanton & Blanton* and *E. L. Holloway* for appellants.

610

*Robert C. Hyde, H. K. Wangelin* and *R. Kip Briney* for respondent.

[300] TIPTON, J.—This action was filed by respondent in the circuit court of Stoddard County against the appellants for personal injuries and property damages suffered by respondent in a collision between a Nash automobile operated by respondent and a tractor-trailer owned by appellant O. L. Woods and operated by appellant James Baxter Guynes. The collision took place on U. S. Highway 60 in Stoddard County, Missouri, on October 17, 1948. Appellant Woods filed a counter-claim for property damages to his tractor-trailer and appellant Guynes filed a counter-claim for loss of services of his wife who was a passenger in the tractor-trailer. On change of venue the case was transferred to the circuit court of Butler County. The jury returned a verdict in favor of respondent for personal injuries in the sum of $40,000 and for property damages to his Nash automobile in the sum of $1,200. The jury also returned a verdict in favor of respondent on the counter-claim of Guynes and the counter-claim of Woods. Judgment was entered in accordance with the verdict and the appellants have duly appealed to this court.

As to how the collision occurred the evidence is very much in conflict. Since the jury found for respondent, we will state the evidence most favorable to him. This collision occurred just west of bridge J424 on Highway 60 in Stoddard County. This bridge is about one and one-half miles east of a corner described as Four-Way Inn. Respondent lived in that neighborhood and on the morning of the accident he had driven his Nash automobile to Dexter which is some 6 or 7 miles east of the bridge J424. He was returning to his home that morning, driving west on this highway, when his automobile collided with a K-7 1946 International tractor with a Carter semi-trailer belonging to appellant Woods and being driven east on this highway by appellant Guynes as an employe of Woods. Both appellants lived in Corning, Arkansas. The tractor and trailer weighed 15,300 pounds and it was carrying 25,000 pounds of soybeans from Neeleyville, Missouri, to Cairo, Illinois.

The north side of Highway 60 was being repaired and there were barricades on the north side for about two miles east and two miles west of the bridge near the point of collision. The respondent testified that the barricades "looked awfully thick, looked like fence posts." Witness Cox testified that these barricades were "pretty thick" all of the way from the Four-Way Inn to the point of impact except for one patch on the highway 10 or 15 feet east of the east end of the bridge, and at that place there were no barricades on the north side of the highway. Where the repairs began at the west there was a highway sign to reduce the speed to 25 miles an hour, and nearer the bridge there was evidence that there was a sign instructing motorists to reduce the speed to 15 miles an hour.

The first barricade west of bridge J424 was 44 feet from the west side of this bridge; the second barricade was 10 feet west of the

first barricade; the third barricade was 20 feet west of the second barricade. This bridge was 102 feet long and 20 feet wide. The highway was concrete, 18 feet wide.

Respondent testified that he crossed this bridge on the south side and when he was even with the first barricade west of the bridge he first saw the appellants' tractor and trailer coming over Lick Creek bridge. Lick Creek bridge is 688 feet west of the first barricade west of bridge J424. He drove past the second barricade and attempted to get in between the second and third barricades but could not get the back end of his Nash automobile between these barricades. The back end of his car was sticking out over the south side of the highway. He then put his automobile in reverse and backed in order to get away from the oncoming tractor and trailer and was making an effort to get back of the first barricade west of bridge J424. As the back end of his automobile was getting on the north side of the highway, the tractor hit the front end of his car, driving the car in a northeast direction into the north bannister of the bridge and then east of the bridge, knocking down one or two barricades that were east of the bridge. The front end of [301] the car and the front end of the tractor were against each other when they came to a stop and about 3 feet of the trailer was left standing on the bridge. Respondent also testified that as he was trying to back away from appellants' tractor-trailer it did not slow down any and it was "coming awfully fast."

Highway Patrolman Crites testified that he arrived at the scene of the accident about an hour after it had happened; that the respondent had already been taken to the hospital and therefore he did not talk with him. He did testify that he took a statement from the appellant Guynes who stated that respondent got " 'middle ways of the barricades and then he stopped and started backwards. He could have made it if he would have come on.' " He also told the patrolman that he was traveling 30 miles an hour at the time of the collision.

Respondent's witness Wilkerson testified that he was familiar with the type of tractor-trailer operated by appellants and that with this equipment and load traveling at a speed of 30 miles an hour he could stop this tractor-trailer within its own length. Another witness for respondent, McCollum, testified to the same things except that he could stop the tractor-trailer in 65 feet. Appellants' witnesses testified that if the brakes had been applied just previously they could stop the tractor-trailer within 200 to 225 feet. Appellant Guynes testified that he had applied the brakes just before he saw respondent's car. Appellants' witness Snider testified that similar equipment would travel 40 feet while the driver was reacting to the sudden emergency, and on direct examination he stated he could stop

within 140 feet going 25 miles an hour while on cross-examination he stated he could stop within 140 feet going 30 miles an hour.

However, appellants' testimony as to the manner in which the collision happened is diametrically opposed to the respondent's. Appellants' theory of the case was that respondent was on the north side of the pavement and when appellants' truck was 30 or 40 feet away respondent suddenly pulled out in the path of their truck. Other essential facts will be stated in the course of the opinion.

■ Appellants' first assignment of error is that the trial court erred in giving respondent's instruction No. 1 submitting the respondent's theory of the humanitarian doctrine.

Appellants' first attack on this instruction is that there is no evidence of the respondent that appellant Guynes could have stopped the tractor-trailer in time to have avoided the collision. Respondent testified that the tractor-trailer was traveling "awfully fast." He did not testify as to the rate of speed this tractor-trailer was traveling. However, respondent's witness Crites, a highway patrolman, testified that appellant Guynes stated that he was traveling 30 miles an hour. Appellants contend that respondent cannot use this testimony because it is contrary to respondent's own testimony and at war with his theory of the case. If this is true, of course, he cannot use the patrolman's evidence on this point. See Dilallo v. Lynch, 340 Mo. 82, 101 S. W. 2d 7; Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S. W. 2d 696; Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S. W. 2d 5. The fact that the respondent testified that the tractor-trailer was going "awfully fast" is not inconsistent with the testimony that it was going 30 miles an hour as appellant Guynes had told Crites he was traveling at the time of the collision. In other words, "awfully fast" under the conditions that there existed is not inconsistent with 30 miles an hour. Hall v. Phillips Petroleum Co., 358 Mo. 313, 214 S. W. 2d 438. It is to be remembered there was testimony that the State Highway had put up signs along this part of Highway 60 limiting the speed of an automobile to 15 miles an hour. Under the facts previously stated, the jury had a right to draw the inference that the respondent was in imminent peril when he started to back up his car and at that time appellants' truck was at least 500 feet away. Under the expert testimony we have already shown that the tractor-trailer could have been stopped before the collision, even if we take the evidence of appellants' witnesses [302] most unfavorable to respondent, which would be 250 to 275 feet.

■ Appellants further state that this instruction is erroneous because it stated "that by keeping a lookout, James B. Guynes could or should have known that plaintiff was in such position of imminent peril, * * *." It is appellants' position that this is primary negligence and therefore has no place in a humanitarian instruction.

Since the case of State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. 2d 798, we have held that antecedent negligence of a defendant cannot be taken into consideration in determining whether he was negligent under the humanitarian rule. In ruling that case, we said (loc. cit. S. W. 2d 801):

"* * * that when such peril arises the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise ordinary care in certain respects—to make timely discovery of the peril, if it was his duty to be on the lookout, and thereafter to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others."

"Although we have thus greatly widened the field of its application, we have not included peril not actually discovered, unless the place of the accident was a place where the operator of the instrumentality was, at all times he approached it, under a legal duty to keep a lookout. In the case of automobiles operating upon public streets and highways, the operator has imposed upon him the continuous statutory duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon and in every other respect. Gude v. Weick Bros. Undertaking Co., 322 Mo. 778, 16 S. W. (2d) 59; Hart v. Weber (Mo. Sup.) 53 S. W. (2d) 914; Kaley v. Huntley, 333 Mo. 771, 63 S. W. (2d) 21." Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S. W. 2d 116, 1. c. 123-124.

We hold this assignment of error is without merit.

Appellants also contend that the following phrase in this instruction, "with reasonable safety to the tractor and trailer, the contents thereof and all persons riding therein or thereon and others using the highway," makes this instruction erroneous. The appellants contend that the use of the word "reasonable" implies that the driver of the tractor-trailer must expose himself and the passengers to some degree of danger.

In the case of Hartley v. McKee, 86 S. W. 2d 359, 1. c. 363, the St. Louis Court of Appeals said:

"In Bartner v. Darst, 285 S. W. 449, 453, our Supreme Court gave its approval to an instruction embodying the humanitarian doctrine in which the phase of the doctrine now under consideration was stated as follows: 'And with reasonable safety to the defendant and the other occupant of said automobile.' We think there is quite a difference between the phrase 'with reasonable safety to the defendant and other occupants of the automobile' and the phrase 'without unreasonable danger to his said automobile, its occupants and other vehicles and persons thereabout,' for the reason that the latter phrase must necessarily be understood as implying that some degree of danger, just so it be not unreasonable, must be incurred by the defendant to avoid injuring the plaintiff if defendant is to be

616

exculpated from the charge of negligence under the doctrine mentioned."

The use of the word "reasonable" in the phrase just quoted does not imply that the appellant Guynes, his passenger and the tractor-trailer must be exposed to some degree of. danger. "The exercise of reasonable care does not require one man to save another at such expense to himself or his fellows." Spoeneman v. Uhri, 332 Mo. 821, 60 S. W. 2d 9, l. c, 11.

Appellants also contend that the theory of instruction No. 1 is inconsistent with instruction No. 3 given at the request of respondent. Instruction No. 3 is based on excessive speed. In their brief the appellants say, "The excessive speed depended upon by the Respondent apparently was his testimony, 'But he wasn't slowing down any, he was coming awfully fast,' and as stated in his deposition, 'Well the truck [303] was coming awfully fast looked to me like.' " We do not agree with appellants that respondent is limited to the testimony quoted in their brief. As already stated, the highway patrolman testified that appellant Guynes stated he was driving 30 miles an hour at the time of the collision. Since there was testimony that there were highway signs ·limiting the speed to 15 miles an hour, then of course the jury could find that 30 miles an hour was excessive. We have already shown that there was ample evidence that the tractor-trailer could have been stopped after respondent got into a position of imminent peril. There was no inconsistency in submitting both grounds of recovery ·since there was evidence to support both. Mahan v. Baile, 358 Mo. 625, 216 S. W. 2d 92; Bumgardner v. St. Louis Public Serv. Co., 340 Mo. 521, 102 S. W. 2d 594; Williams v. St. Louis Public Serv. Co., 335 Mo. 335, 73 S. W. 2d 199.

Appellants contend that the court erred in giving instruction No. 3 at the request of respondent.

Appellants' first objection to this instruction is the language of the first paragraph. It told the jury that if the north side of this highway was obstructed by barricades erected by the State Highway Department, the highway at that particular point was "within the law, the remaining passable way, and the plaintiff, Robert Green, then had an equal right with defendant Guynes to use the remaining passable way."

First, it is the contention of appellants that Guynes had the right of way since it was the north side of the highway that was barricaded, that while respondent had a right to use the south side of this highway, it was his duty to give way to traffic from the opposite direction. This may be·the law in other states but the law in this state is as stated in the first paragraph of this instruction, "Where on account of obstructions a part of the paved or dedicated street is made impassable, the road, in the meaning of the statute and

ordinance, refers to the remaining passable way." Harmon v. Fowler Packing Co., 129 Mo. App. 715, 1. c. 720, 108 S. W. 610.

We have already stated the evidence and will not repeat it; suffice to say the evidence on behalf of respondent would sustain this instruction.

Appellants further state that respondent is guilty of contributory negligence as a matter of law and, therefore, this instruction on primary negligence should not have been given. There is no evidence that respondent observed the speed of the tractor-trailer until he started to back up and from that time until the collision respondent was trying to get from a place of danger to a place of safety. We are of the opinion this objection to the instruction is without merit.

Appellants contend that instruction No. 7 given at the request of respondent is erroneous. The instruction reads as follows:

"The Court instructs the jury that if you believe and find that at the time and place of the collision mentioned in evidence, the defendant Guynes was operating the Woods truck at an excessive or dangerous rate of speed under the circumstances; or if you find that the defendant Guynes failed to use the highest degree of care to discover the plaintiff Robert Green; or if you find that the defendant Guynes failed to use the highest degree of care to stop or slow down the truck he was driving to avoid colliding with the plaintiff Robert Green; and if you further find that such negligence, if any, on the part of said Guynes directly contributed to cause the collision, then your verdict will be for the plaintiff Robert Green and against the defendants Guynes and Woods on defendants' counter-claim even though you may find and believe that Robert Green was also negligent."

In this instruction all assignments of negligence were submitted in the disjunctive and if the submission of any assignment is erroneous the instruction is erroneous. The first assignment of negligence submitted is that the appellants were operating the truck "at an excessive or dangerous rate of speed under the circumstances." In the case of Yates v. Manchester, 358 Mo. 894, 217 S. W. 2d 541, we held an instruction which stated that the taxi cab was driven [304] "at an excessive and dangerous rate of speed under the circumstances" was error. In ruling that case, we said, "The issue of negligence was submitted without any guide whatever as to what particular speed, or under what particular circumstances, would sustain a finding of negligence. No issues of fact were submitted for determination, although the parties had offered conflicting evidence as to speed and circumstances. The jury was given a roving commission to speculate and make their own determination as to what conduct constituted negligence." (Loc. cit. S. W. 2d 544).

Respondent contends that it is not necessary to state facts in this instruction because facts were stated in other instructions. In-

618

struction No. 1 did state facts in submitting the humanitarian instruction, and instruction No. 3 did state some facts as to the positions of the automobile and the truck, the barricades, etc., but neither of these two instructions gave any facts as to what would constitute excessive speed under the circumstances. We think instruction No. 7 was erroneous because it gave the jury a roving commission to determine what was excessive speed under the circumstances. While the point was not raised by appellants, we think instruction No. 3 was also erroneous for the same reason. It is not necessary to discuss appellants' other reasons as to why this instruction is erroneous.

Appellants next contend that the trial court erred in refusing their requested instruction No. 15. Among other things, that instruction told the jury that if they find that respondent's automobile was "driven or backed to the left of the center into the south side of the highway and into the path of the tractor and trailer driven by the Defendant Guynes so closely in front of said tractor and trailer that the Defendant Guynes could not, * * * have avoided striking said automobile, then Plaintiff is not entitled to recover * *, * ''

The refusal of this instruction is not error. Similar instructions had already been given at appellants' request.

Appellants further contend that the trial court erred in refusing to give their requested instruction on sudden emergency. In the case of Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W. 2d 254, we held that a sudden emergency instruction in a negligence case submitted on the humanitarian doctrine should not be given. We hold the trial court properly refused this requested instruction.

For the error in instruction No. 7, this cause is reversed and remanded for a new trial. All concur.