Juanita VINSON (Plaintiff), Respondent,

v.

EAST TEXAS MOTOR FREIGHT LINES,
a Corporation, and Clarence C. Freeman
(Defendants), Appellants,

and

Dewey Bell (Defendant), Respondent.

No. 44214.

Supreme Court of Missouri.

Division No. 1.

March 14, 1955.

Motion for Rehearing or to Transfer to Court
en Banc Denied and Opinion Modified on
Court's Own Motion May 9, 1955.

Motion to Set Aside Per Curiam Opinion
and for Rehearing Denied
June 13, 1955.

Wilbur C. Schwartz, St. Louis, and Henson & Henson, Popular Bluff, for (defendants) appellants, Joseph Nessenfeld, St. Louis, of counsel.

Hyde & Purcell, Poplar Bluff, for respondent Juanita Vinson.

Wangelin & Friedewald, Poplar Bluff, for (defendant) respondent.

VAN OSDOL, Commissioner.

This action was instituted by Juanita Vinson, plaintiff, against East Texas Motor Freight Lines, a corporation (sometimes hereinafter referred to as "East Texas"), and its employee-driver, Clarence C. Freeman, and against one Dewey Bell for the wrongful death of plaintiff's husband, Milburn Vinson, the result of an alleged motor vehicle collision occurring about 9 o'clock in the morning of February 15, 1952, on U. S. Highway No. 67 at a point on that highway between the Cane Creek bridge and the Diversion Channel bridge about eight miles south of Poplar Bluff in Butler County. Defendant Bell also stated a cross-claim against defendants East Texas and Freeman for personal injury and property damage. A jury found for plaintiff and against defendants East Texas and Freeman assessing $15,000 damages, and the jury found for defendant Bell and against plaintiff on her claim against defendant Bell. And the jury found for cross-claimant, defendant Bell, and against defendants East Texas and Freeman, on the issues of Bell's cross-claim against those defendants, assessing $7,500 damages. Defendants East Texas and Freeman have appealed from the judgments against them. Plaintiff has not appealed from the judgment in favor of defendant Bell and against her on her claim.

Herein upon appeal, we have the primary questions of the submissibility of plaintiff's case as against defendants, East Texas and

Freeman, and the submissibility of the case of cross-claimant, defendant Bell, as against his co-defendants, East Texas and Freeman.

Going southwardly, U. S. Highway No. 67, paved with concrete twenty feet in width, passes down a hill north of the Cane Creek valley and then across the level northerly portion of the valley to the north end of the Cane Creek bridge, two hundred forty feet long. Going farther southwardly, the highway passes over a distance of seven hundred sixty-six feet to the north end of the Diversion Channel bridge, one hundred ninety feet in length. The highway is practically level and straight from about thirty-five hundred feet north of the Cane Creek (the north) bridge to about three thousand feet south of the Diversion Channel (the south) bridge. The pavement at and over the bridges is twenty-two feet wide. When the instant casualty occurred, the Diversion Channel bridge was being painted, and the easterly half of the concrete pavement over that bridge was barricaded.

Three motor vehicles were involved in the tragedy.

A motor vehicle with 1948 V8 Ford chassis and "Nabors" van-type body, belonging to Ozark Beverage Company (hereinafter sometimes referred to as "Ozark") was moving southwardly. The body of the Ozark truck had been specially fabricated by Nabors for Ozark to haul beverages over "hills and curves we have to go through." The closed-in metal body was twelve feet long, seven and one-half feet wide and six feet high. A bar of heavy metal approximately five inches wide was fixed to the lower edge of the back end of the body. The metal bar was perhaps an inch thicker at its ends than "in the center", so that at its ends it was about one inch farther to the rear than it was in the center. The van-type body was set down on and clamped to the frame of the chassis with six half-inch "U" bolts, three on each side. The body contained an evenly distributed 70% load of two hundred cases of beer weighing eight or ten thou-

sand pounds. Plaintiff's decedent, Milburn Vinson, and one A. B. Buchanan were Ozark's employees in charge of the Ozark truck. Both Vinson and Buchanan were authorized by Ozark to drive the truck, but it seems it has never been possible to establish which of them, Vinson or Buchanan, was driving. Both were killed in the ensuing collision. Their bodies were thrown into the top of the cab of the overturned Ozark chassis and burned beyond recognition.

In moving from some point south of the south end of the Cane Creek (the north) bridge, the Ozark truck was being followed by the southbound East Texas KB-7 International tractor with closed-in trailer loaded with about eleven tons of freight. The East Texas tractor was equipped with a "cowcatcher", designed for protection against collisions with cattle in the "open range" areas. This cowcatcher or bumper, about two and one-half feet in height, extended across the front of the grillwork, lights and front fenders of the tractor. It consisted of bars of tubular metal. The lowest metal tube was about four inches in diameter and welded to industrial sheeting which sheeting extended back and was welded onto or rested against the frame of the tractor just below the grillwork at the front of the engine. The combination East Texas vehicle was being driven by defendant Freeman.

A 1940 model GMC "open" lumber truck loaded with "ties and squares" (the load weighing four to five thousand pounds) was moving northwardly. It was driven by defendant (cross-claimant) Dewey Bell. He had driven across the south (Diversion Channel) bridge and, because of the barricade, had moved over on the westerly (his left) side of the highway across the bridge.

After the collision (or collisions) the chassis (including the cab and engine) of the Ozark truck was lying on its right side headed northeastwardly diagonally across the east half of the pavement. The body of the Ozark truck, entirely detached from the chassis, was south of the chassis. The truck body was lying on its right side with

its rear end extending southeastwardly—half on the pavement, half on the shoulder—sixteen feet north of the north abutment of the (south) bridge. The front of the right side of the chassis was demolished. Both of the front lights and the grillwork were intact. The front tires of the chassis were inflated, but the rear tires were "down." There was testimony of skid marks, approximately ninety feet long, angling back from the Ozark chassis northwestwardly across the pavement, thence northwardly along the west side of the pavement where, apparently, one of the marks was for some distance "off on the shoulder."

The East Texas tractor-trailer headed southwardly was standing uprightly on the west side of the pavement. Its front end was against, or nearly against the underneath side of the rear end of the overturned Ozark chassis. Photographs show the left of the cowcatcher and industrial metal sheeting to have been somewhat sprung upwardly, and the upper part of the left end of the cowcatcher seems to have been bent somewhat backwardly. Some object had been in contact with the lowest tubular bar of the cowcatcher so that an indentation and hole were pressed into and punctured through the tube at a place about fifteen inches from the left end of the cowcatcher. The front tires of the tractor were "down", and the tractor's left front fender appears to have been crushed back and buckled. (Defendant Freeman testified the damage to the fender and tires was caused by the fire which burst from the Ozark engine and cab immediately after the chassis was overturned, and he said the indentation and hole were in the lower tube of the cowcatcher before the collision.)

The Bell lumber truck came to rest in an upright position headed northwestwardly, east of the Ozark truck body and chassis. It was entirely off the pavement on the "shoulder" of the highway, with its front wheels about two feet from the eastern edge of the pavement. The front of the Bell truck was demolished.

It is inferred that as the Ozark truck moved southeastwardly at an angle across the pavement it was struck by the front end of the lumber truck driven by defendant Bell, but the initial question is—was there substantial evidence tending to show that the East Texas truck was so negligently managed as to strike the rear end of the Ozark vehicle so as to cause it to go out of control southeastwardly across the pavement into the pathway of the lumber truck.

One Spencer, a witness for plaintiff, testified that he was driving southwardly on Highway No. 67 following the East Texas and Ozark vehicles when they were north of the north (Cane Creek) bridge. At first he thought there was only one truck and started around it. He then became aware "there was a truck ahead of the East Texas truck." He had not seen the Ozark truck pass the East Texas truck. When he started to pass them they were "very close together." He did not pass on around the two trucks because he knew the easterly half of the south bridge was barricaded. (Since there was evidence tending to show the Ozark truck started around the East Texas combination vehicle as it was moving over or just passing off of the north bridge, it could be inferred that, when the witness said the trucks were moving "very close together", he meant they were so moving after they had crossed the north bridge.) The witness further testified that as the trucks "approached the second bridge, the truck in front swerved, jackknifed or turned over into the left hand lane of the highway, and immediately burst into flames." The rear end of the Ozark truck "was already in the air as she turned." He did not see the "tie truck" (the Bell lumber truck) before the Ozark truck overturned, "but simultaneously or immediately thereafter, the tie truck came through and went over on the left hand (east) side of the pavement off on the shoulder." The witness had been about three hundred feet back of the East Texas truck and was not in a position to see whether the East Texas truck had

struck the Ozark truck while the latter was yet on the west side of the highway.

Defendant Dewey Bell testified that, as he was driving northwardly, he saw the East Texas vehicle moving some distance north of the north bridge at about forty miles per hour. The Ozark truck moving fifty or fifty-five miles per hour started to pass around the East Texas vehicle when it was "just getting off of the (north) bridge." The Ozark truck "got past" when it was one hundred or one hundred fifty feet south of the bridge, and it was two hundred feet south of the bridge when it "straightened up and came right on down the road nice. * * * On its own side." When the witness, defendant Bell, had got to the north end of the bridge the Ozark truck was yet two hundred fifty feet away. When Bell got back on his own (east) side of the highway, the Ozark truck was still on its own (west) side of the highway, "and it swerved to the right (west), front and rear wheels both went off the pavement, seemed to be about twenty feet * * * and cut right back (southeastwardly) across in front of me. * * * It jackknifed in front of me up there." The body of the Ozark truck went "around to the south and the truck turned back east." The witness, defendant Bell, further testified "the debris was a hundred and fifty feet where the burning was, from the end of the bridge."

Defendant Freeman, driver of the East Texas combination vehicle, testified the Ozark truck started to pass around the tractor-trailer as it went onto the north bridge and "when he got over in front of me why he began to swerve and got off the road and the next thing I knew there was an accident." The East Texas vehicle was about one hundred feet behind the Ozark truck at the time the Ozark truck overturned. He said the East Texas vehicle did not come into contact with the Ozark truck at any time before the latter vehicle turned over. The East Texas vehicle stopped on the west side of the pavement with its end "just right against" the rear housing of the overturned Ozark chassis. Freeman testified he "didn't hit anything."

The witness further said he jumped five feet down to the pavement from the right-hand side of his cab, obtained a fire extinguisher and endeavored to extinguish the fire which had burst from the Ozark cab and engine. He sustained the fractures of two vertebrae when he jumped from the cab. He was hospitalized three or four weeks, and did not work for a year.

Defendant Freeman had made a former statement that after the Ozark truck had passed the East Texas vehicle, "all of a sudden, he (the Ozark truck) started to swerving and skidding, and * * * he (Freeman) couldn't get his truck stopped until he hit the beverage truck." On the witness stand defendant Freeman explained that, when the statement was assertedly made, he had been injured and was in pain, and if he made the statement, "I don't remember it."

There was no debris on the west side of the pavement. Debris was found on the east side of the pavement about "middle-ways" of the east lane and north of the barricade. The debris was north of the overturned body of the Ozark truck. The "south side" of the body of the overturned Ozark truck was about sixteen feet north of the north abutment of the south bridge. As stated, the witness, defendant Bell, testified the debris, where the Ozark cab burned, was one hundred fifty feet north of the (south) bridge.

No witness, other than defendant Freeman, testified directly upon the factual issue of a collision of the East Texas vehicle with the rear end of the Ozark truck while the latter was moving along the west side of the pavement.

It was the theory of plaintiff and of cross-claimant, defendant Bell, as submitted in their respective verdict-directing Instructions Nos. 1 and 6, that, as the Ozark truck was proceeding "in front of" the East Texas vehicle, defendant East Texas, through its employee defendant Freeman, "negligently and carelessly caused and permitted the (East Texas) truck * * * to collide with the rear

end of the said van-type truck", and that such negligence was the proximate cause or a proximate concurring cause of the death of plaintiff's decedent and the personal injury and property damage sustained by cross-claimant, defendant Bell. Such a charge in a petition (in language as we have quoted from Instructions Nos. 1 and 6), and such a submission in an instruction is regarded as a charge and submission of specific negligence. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68; Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360.

Herein, as stated, defendants-appellants make the contentions that the evidence was insufficient to justify the submissions. Defendants-appellants argue there was absolutely no reasonable basis for the jury to find, without resort to speculation and conjecture, that defendants were negligent or that defendants' negligence was a proximate cause of the collision between the Ozark truck and that driven by Bell. They urge the evidence showed the Ozark truck first turned to its right onto the west shoulder, and its driver then turned the truck to its left, apparently to avoid going down an embankment, and then drove southeastwardly across the pavement and into the pathway of the Bell truck. They say the evidence does not justify the conclusion they had any direct responsibility for the casualty—they say there was no evidentiary basis for a finding that the casualty would not have occurred in the same manner (and with the same result) had the East Texas tractor-trailer been absent from the scene.

In this case we believe the evidence introduced tending to support the one submission of plaintiff's case also tends to support the other submission of cross-claimant's case, that is, the one initial question is—was there substantial evidence tending to show that the tractor-trailer belonging to East Texas and being operated by its driver Freeman was negligently driven into collision with the Ozark truck and that

such negligence was a proximate cause of the death of plaintiff's decedent (and of the personal injury and property damage sustained by cross-claimant, defendant Bell). On this question we shall review the evidence, and we shall consider the evidence from a standpoint favorable to plaintiff (and cross-claimant, defendant Bell), and in so doing we shall disregard evidence introduced by defendants East Texas and Freeman as was unfavorable to plaintiff and Bell, as the jury had a right to do. Therefore, at the outset, we shall disregard the testimony of defendant Freeman that the East Texas vehicle did not collide with the rear end of the Ozark vehicle, and, having disregarded such testimony of Freeman, we see the question of the submissibility of the issue of a rear-end collision is to be determined almost entirely on circumstantial evidence.

■ Of course, facts essential to a recovery may be proved by circumstantial evidence, but the shown circumstances must be such that the necessary facts may be inferred therefrom and they must reasonably follow. It has been said the evidence must "exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511; Schoen v. Plaza Exp. Co., Mo.Sup., 206 S.W.2d 536; Helton v. Huckeba, Mo., 276 S.W.2d 78. As explained in Brawley v. Esterly, Mo.Sup., 267 S.W.2d 655, 659, the terms "guesswork, conjecture, and speculation" are here used in the sense of reaching a conclusion by theorizing upon assumed factual premises outside of and beyond the scope of the evidence. See also West v. St. Louis Public Service Co., Mo. Sup., 236 S.W.2d 308.

It may be assumed that the debris on the east side of the pavement indicated the approximate point of collision between the Bell lumber truck and the Ozark chassis. But, as stated, there was no debris on the west side of the pavement which would tend to indicate a collision or the point of a collision, if so, of the East Texas equip-

ment with the rear of the Ozark truck while it was moving on the west side of the pavement. Nevertheless, the absence of debris on the west side of the pavement was not decisively inconsistent with a rear-end collision of the East Texas and Ozark vehicles on that side of the pavement. It would not be unreasonable to suppose that a collision of vehicles moving in the same direction, as these vehicles were, would not always be of such force of impact as to greatly fragment, shatter or break off the contacting parts of the colliding vehicles.

We recall the testimony of the witness Spencer that the East Texas and Ozark trucks were "very close together" and that he thought there was but one when he started to (but didn't) go around them. The witness Spencer also said the rear end of the Ozark truck was already in the air "when she turned." Defendant Bell testified the body of the Ozark truck went around to the south and the truck turned back east. Both of these witnesses used the term "jackknifed", which term, it would seem, indicates the witnesses were really saying that the truck body was at an angle from the chassis when the Ozark (single unit) vehicle veered or turned southeastwardly into the east lane of the pavement. This testimony sustains the reasonable inference that the Ozark truck body had been detached from the chassis at the time or before the truck turned. If it was detached before the truck turned, then it could not be reasonably inferred that the evenly distributed load within the body of the truck shifted and caused the severance of the body from the chassis *in turning;* but, in fairness it may be said it was possible that the "U" bolts, which had been used in clamping the body to the chassis of the Ozark truck were loosened or sheared off by the mere shifting of the truck-body load as the truck swerved back and forth, while the truck was on the west side of the highway.

The rear tires of the Ozark truck were deflated. Photographs, exhibits introduced into evidence, disclose the lower tubular bar of the "sprung" cowcatcher of the East Texas tractor was indented and punctured, and the left front fender of the tractor was damaged and buckled. The indentation and puncture were in elevation approximately the same as the metal bumper fixed upon the lower edge of the rear end of the Ozark truck body. Having carefully examined these exhibits, we say the cowcatcher and fender had the appearance of having been forcibly thrust against some object.

The jury was not obliged to believe the testimony of defendant Freeman that the fractures of two vertebrae were suffered in jumping from the cab of the East Texas tractor-trailer, and, if this testimony of the cause of the fractures is ignored, it could be reasonably inferred the fractures were caused by some other "body-whipping" trauma, such as might be experienced in a collision of the East Texas combination vehicle with the rear end of the Ozark truck. We have also noticed Freeman's former statement, which he now does not remember making, that after the Ozark truck had passed the tractor-trailer, the Ozark truck started swerving and skidding, and that he (Freeman) couldn't get his truck stopped until he "hit" the beverage truck. The statement was an admission that the East Texas vehicle "hit" the Ozark truck, and the statement was, in our opinion, reasonably subject to the jury's interpretation that Freeman, when he made the statement, meant the Ozark truck was "hit" while it was moving on the west side of the highway. The witness, defendant Freeman, further explained that, if he made the statement, he must have meant "he hit the beverage truck" after it had turned over. Of course, the whole of the statement and the witness's explanation were subject to the jury's consideration and interpretation, but, if the jury believed Freeman made the statement, and if the jury believed the self-disserving part of the statement that the East Texas truck "hit" the Ozark truck, nevertheless, the jury was not obliged to believe the self-serving part of the statement implying that the Ozark truck swerved and skidded before it was hit.

We believe the evidence reviewed supra was substantial in affording bases for the reasonable inferences, and we believe there was no shown circumstance decisively inconsistent with the inferences that defendant Freeman negligently drove the combination vehicle into collision with the rear end of the Ozark truck, and that such negligence was a proximate cause or a concurring or contributing proximate cause of the death of plaintiff's decedent and of the injury and damage to defendant Bell and his truck.

But it is contended by defendants-appellants that the conduct of cross-claimant, defendant Bell, was such as to make him guilty of contributory negligence as a matter of law. They say that, although Bell saw the approach of the southbound vehicles at a rapid rate of speed coming toward him on the west side of the highway, he, nevertheless, continued to drive forward on the west side of the highway. It is argued that in the exercise of the highest degree of care it should have been apparent to Bell that in so doing he created a position of danger for the approaching Ozark truck and its occupants, and, since he made no effort to increase his speed or turn to the east before the danger of an apparent head-on collision was so imminent, he should not be permitted to recover. We cannot follow the argument of defendants-appellants in this connection. On this question, whether cross-claimant Bell was contributorily negligent as a matter of law, we consider the evidence from a standpoint favorable to him. Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498. The east side of the highway was barricaded. See Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298. We have stated supra the testimony of Bell that he crossed the south (Diversion Channel) bridge when the Ozark truck was two hundred fifty feet away on its own side of the highway, and that when Bell had passed the barricade and got back over on his own right-hand side, the Ozark truck swerved to its right and then to its left and across the east lane. In the circumstances, as stated by the witness, defendant Bell, we cannot say that he was as a matter of law negligent in not moving more to the right in crossing the bridge or in not turning sooner to his right after he had passed the barricade at the north end of the bridge. We are of the opinion that cross-claimant Bell should not be held to have been contributorily negligent as a matter of law.

Turning now to contentions made by defendants-appellants, of error of the trial court in instructing the jury, we are at once confronted with plain error in instructing the jury which error, we believe, must be held to have been prejudicial to defendants (appellants) as to the issues of negligence submitted under both plaintiff's claim and defendant Bell's cross-claim.

At plaintiff's instance, the trial court gave Instruction No. 5, instructing the jury "that the law presumes that Milburn Vinson was in the exercise of due care for his own safety in the absence of evidence to the contrary." Defendant East Texas had alleged that plaintiff's decedent was contributorily negligent in the specific respect, among others, that he "drove his automobile truck at a high and dangerous rate of speed under the circumstances then and there existing"; but no issue of his contributory negligence in any respect was submitted to the jury. This was, no doubt, because it could not be shown which of the Ozark employees, Vinson or Buchanan, was driving, and consequently, it could not be shown in what specific respect plaintiff's decedent was negligent, if so. It is established that an instruction which includes the direction that a presumption exists as to the exercise of the prescribed standard of care by a deceased is erroneous, at least where there is evidence from which deceased's negligence on the occasion in question reasonably might be found by the jury. Lebow v. Missouri Public Service Co., Mo.Sup., 270 S.W.2d 713, and cases therein cited. The presumption of the exercise of care is a procedural one, and the jury should not be instructed about it. Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 163 S.W.2d 548. Plaintiff-respondent urges that Instruction No. 5 was harm-

less because, she says, under the facts no issue of contributory negligence was or could be involved or submitted. However, the trial court, at the instance of defendant East Texas, gave Instruction No. 12 submitting the "sole cause" negligence of the *"operator"* of the Ozark truck, specifically in operating the vehicle at a high, excessive and dangerous rate of speed "and that the collision was not caused by or due to any negligence on the part of Clarence C. Freeman, operator, of the truck of East Texas * * *, or of the defendant Dewey Bell in the operation of his motor vehicle, * * *." Plaintiff-respondent has made no contention here that the issue of the sole cause negligence of the operator of the Ozark truck, whether Vinson or Buchanan, was not submissible. And it seems plain to us that the erroneous Instruction No. 5 was prejudicial to defendants, East Texas and Freeman, in advising the jury that the law presumes plaintiff's decedent "was in the exercise of due care for his own safety." The advice in the instruction cut across or was in conflict with Instruction No. 12, and in part or wholly took from the jury the full consideration of the defense of the sole cause negligence (as submitted in Instruction No. 12) of the "operator" of the Ozark vehicle, who indeed may have been plaintiff's decedent.

It is now unnecessary to examine further contentions of error in instructing the jury, and of error in the exclusion of evidence. Counsel may analyze these further questions and the error, if such (further) error was committed, may be avoided upon a retrial.

The judgments against defendants should be reversed, and the cause remanded.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM. ·

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

DALTON, P. J., HOLLINGSWORTH, HYDE and WESTHUES, JJ., and HOLMAN, Special Judge, concur.

On Motion for Rehearing.

PER CURIAM.

In the principal opinion we have said that error in instructing the jury by the giving of plaintiff's Instruction No. 5 was prejudicial to defendants-appellants, East Texas and Freeman, as to the issues of negligence submitted under both plaintiff's claim and defendant Bell's cross-claim. Cross-claimant Bell by motion for rehearing has pointed out that defendants East Texas and Freeman did not assign error in their motion for a new trial in the giving of Instruction No. 5 as affecting the trial of the issues of defendant Bell's cross-claim against those defendants. Supreme Court Rule 3.23; 42 V.A.M.S. We have further re-examined the brief of defendants East Texas and Freeman and have ascertained that they did not urge error in giving plaintiff's Instruction No. 5 as affecting the issues of defendant Bell's cross-claim against those defendants. Lansford v. Southwest Lime Co., Mo.Sup., 266 S.W.2d 564; Supreme Court Rule 1.08. We continue to be of the opinion that the error in giving Instruction No. 5 was prejudicial as to the issues of plaintiff's claim against defendants East Texas and Freeman, but we are now of the opinion that error, if so, in giving the instruction, with respect to the issues of defendant Bell's cross-claim was not preserved by our review. This makes it necessary for us to re-examine defendants-appellants' allegations and contentions of error in the trial of the issues of the cross-claim.

We have held in the principal opinion that cross-claimant Bell was not contributorily negligent as a matter of law, and that he made out a submissible case against East Texas and Freeman as submitted in cross-claimant Bell's Instruction No. 6, that is, that those defendants "negli-

gently and carelessly caused and permitted the said tractor and trailer * * * to collide with the rear end of the said van-type truck * * *." The specific negligence so submitted was not so precisely and specifically alleged in defendant Bell's cross-petition, but we hold it was not error to so submit cross-claimant's case. Specific negligence as submitted was within the reasonable purview of the allegations of the cross-petition, and the evidence tending to show the specific negligence as submitted went in without objection. See and compare Biehle v. Frazier, 360 Mo. 1068, 232 S.W.2d 465. We find no further assignment of error in the trial of the issue of liability on cross-claimant's claim.

We shall now consider contentions of error made by defendants-appellants East Texas and Freeman upon the trial of the issue of damages under the cross-claim.

■■ It is inferred that Ozark Beverage Company had paid cross-claimant Bell the sum of $1,500 and that he had executed a covenant not to sue Ozark. This amount was under the law to be credited against whatever judgment defendant Bell should recover, because an injured party may have but one satisfaction for his injuries. When an injured party compromises or settles with one of concurrent or joint tort-feasors for a portion of the injuries, the injured person retains his claim or cause of action against the other tort-feasor and recovery may be had for the balance of the damages for the injury (unless the damage caused by each of concurrent or joint tort-feasors is clearly separable, permitting the definite assignment of responsibility to each). Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825; Carr v. St. Louis Auto Supply Co., 293 Mo. 562, 239 S.W. 827. The trial court permitted the introduction of evidence tending to show that cross-claimant Bell had been paid the sum of $1,500 on account of his injuries, but the trial court excluded evidence showing that the stated sum was paid by Ozark. There is no contention that this sum was not paid by Ozark; and, in this case we believe it was not prejudicial to exclude evidence of

the source of the payment, if the jury were clearly instructed to deduct the sum from the amount of the verdict. In this connection the trial court instructed the jury in cross-claimant Bell's measure of damages Instruction (No. 7) that "in arriving at the amount of your verdict you *may* take into consideration the fact that Defendant Dewey Bell, has been paid the sum of Fifteen Hundred Dollars as mentioned in evidence." (Our italics.) The instruction was faulty in failing to direct the jury that they were required to make the deduction. However, the jury was directed in Instruction No. 9 that "if you further find and believe from the evidence that said sum ($1500) was full and adequate compensation for whatever injuries and damages he (cross-claimant Bell) may have sustained * * *, then your verdict must be in favor of defendants," East Texas and Freeman. But, it is not necessary to consider whether Instruction No. 9 clarified and cured the stated fault or error in Instruction No. 7. The Instruction (No. 7) was erroneous and prejudicially so, we believe, in the further respect that, having enumerated the elements to be considered in measuring the damages of cross-complaint Bell, the instruction continued as follows, "And on the question of damages you are instructed that the law does not afford any standard of measurement more accurate than that given above, but in connection therewith and all credible evidence relating thereto, the law does permit you to take into consideration your common knowledge and experiences in life, * * *." The quoted language tended to depreciate the accuracy of the "standard of measurement" and the enumerated elements thereof to be taken into account in the jury's admeasurement of damages, and permitted and encouraged the jurors to take into consideration whatever other conceivable elements they wished in connection with those the court had enumerated. Moreover, the jurors, having read the instruction, no doubt believed they were to consider the amounts which they may have received or, in their experience, knew had been received by others for injuries like or unlike those sustained by Bell, and without

restriction and reference to the evidence introduced and the elements of damages as enumerated, but "in connection therewith."

The principal opinion is modified only as to the reversal of the judgment of cross-claimant Bell against East Texas and Freeman. This judgment is now affirmed on the issue of liability, and reversed (and the cause remanded) for retrial on the issue of damages.