### GRAMMER
#### v.
### CITY NAT. BANK OF CLEBURNE.

No. 3102.

Court of Civil Appeals of Texas.

Waco.

Oct. 22, 1953.

Rehearing Denied Nov. 19, 1953.

Beale Dean, Leo Brewster, Brewster, Pannell, Leeton & Dean, Fort Worth, for appellant.

Heber Henry, Cleburne, Curtis White, Dallas, for appellee.

HALE, Justice.

Walter Grammer filed this suit in the court below on July 2, 1951 against the City National Bank of Cleburne, hereafter referred to as the Bank, seeking recovery of $38,532.05 with interest thereon at the rate of 8% per annum from certain dates in 1946. As grounds of the recovery sought, he alleged in substance, among other things, that he was engaged in the business of buying cotton at Cleburne for many years prior to April 1, 1946 and in the conduct of his business he carried a checking account with the Bank under the name of "Walter Grammer Cotton Account"; that W. E. Abbas was the senior Vice-President of the Bank and, on or about April 1, 1946, the said Abbas represented to plaintiff that the Bank had a customer with some R.E.A. contracts who had credit requirements in excess of the amount of money which the Bank could legally loan this customer and that it was the Bank's desire to take care of this customer's credit requirements by charging the plaintiff's cotton account from time to time with such amounts of money as was necessary to carry this excess line of credit for that customer; that Abbas verbally represented to plaintiff that any amounts so charged would be a direct loan by plaintiff to the Bank and the Bank would be fully responsible and liable for said loan and for such charges as might be made to the plaintiff's account, and would repay them at any time plaintiff wanted the money, with interest from the date of any charge so made at the rate of 8% per annum; that the Bank thereafter made seven charges to plaintiff's cotton account, pursuant to said agreement, at different dates during 1946 and on January 4, 1950, in the total aggregate sum of $53,032.67; that the Bank received the benefits of all of the foregoing charges and repaid on its obligation to plaintiff the total aggregate sum of $22,500; that on February 28, 1948, the Bank acknowledged its debt to plaintiff, in writing, and therein agreed and promised to pay plaintiff the sum of $30,-532.05 due at that time, with 8% interest thereon.

By his Third Amended Petition which was filed on October 11, 1952, plaintiff impleaded Lyman Walker as a party defendant and, after repleading the substance of the facts alleged in his original petition, he further alleged in the alternative that Walker had executed and delivered to the Bank a promissory note for $23,447.74 and another note for $15,000, which notes were subsequently transferred to plaintiff, with payment thereof being guaranteed by the Bank, that said notes had not been paid and that he was entitled to judgment jointly, and severally, against Lyman Walker and the Bank as guarantor for the amount of said notes.

For its affirmative defenses, the Bank interposed pleas of limitation of one, two and four years, based respectively on Arts. 342-711, 5526 and 5527 of Vernon's Texas Civ. Stats. The Bank further alleged that the agreement between Abbas and the plaintiff was illegal and could not be enforced; that such agreement was ultra vires and that Abbas had no authority to make it; that the plaintiff was estopped from asserting such agreement as a result of the letter of February 28, 1948 from Abbas to him; that the purported oral guarantee which Abbas was alleged to have made for the Bank was within the statute of frauds; that the notes sued on were never owned, negotiated or guaranteed by the Bank, and Abbas was not authorized to guarantee their payment, and any such act on his part would be ultra

vires; and that Abbas was acting as agent for the plaintiff in the transaction and not for the Bank, and any trust violated was the plaintiff's trust, of which the Bank knew nothing and for which the Bank could not be responsible. Although Lyman Walker was duly cited, he failed to appear either in person or by attorney.

The case was tried before a jury. Upon the conclusion of the evidence, the Bank duly presented its motion for a peremptory instruction based primarily upon the affirmative defenses set forth in its answer. The motion was overruled and the case was submitted to the jury on certain special issues, but the jury was unable to agree upon an answer to any of the issues so submitted and was by the court discharged. Thereupon, the Bank presented its motion for judgment in its behalf, notwithstanding the fact that that jury had been unable to reach a verdict, such motion being substantially the same as its original motion for a peremptory instruction. The court granted the Bank's motion and rendered judgment in favor of Grammer against Lyman Walker for the full amount of the notes sued upon, with interest and attorneys' fees, but denied any recovery to Grammer as against the Bank. Hence this appeal.

Appellant predicates his appeal upon two points of error, as follows: (1) "The trial court erred in sustaining the defendant Bank's motion for judgment"; and (2) "The trial court erred in entering judgment that the plaintiff take nothing by his suit against the defendant Bank, because the pleadings and evidence showed the Bank received and retained benefits from the seven charges made to plaintiff's cotton account by Abbas, and it is therefore bound by the representations and agreements Abbas made as its sole representative in the transaction sued on by the plaintiff." On the other hand, the Bank says the trial court did not err in sustaining its motion for judgment for the reasons and upon the grounds set forth in its pleadings.

 In passing upon whether the trial court erred in sustaining the motion of the Bank for judgment, this court must view the evidence as a whole and all reasonable inferences and deductions that may properly be drawn therefrom in the light most favorable to the contentions of appellant. White v. White, 141 Tex. 328, 172 S.W.2d 295; Fitzgerald v. Hull, Tex.Sup., 237 S.W. 2d 256, Pt. 1. If the evidence as thus viewed was such as to raise controlling issues of fact which, had such issues been found favorable to appellant, would have entitled him as a matter of law to a recovery against the Bank, then in that event the judgment should be reversed and the cause remanded for another trial in order that the jury might determine such disputed fact issues. On the other hand, however, if the undisputed evidence in the case was such as to prevent appellant from any right of recovery against the Bank, the judgment appealed from should be affirmed even though some of the issues of fact raised by the pleadings of the parties might have been tendered by the evidence because, in that event, the issuable facts in the case would become immaterial to a correct disposition of the cause.

Appellant testified that he lived in Cleburne from 1930 until sometime in 1945, when he moved to Ft. Worth; that he was engaged during that period of time and up to the time of the trial in the cotton business; that in connection with the conduct of his business he carried a checking account with the Bank and borrowed large sums of money of the Bank from time to time; that the Bank had loaned him as much as $350,000 at one time in the operation of his business, and had loaned him as much as $20,000 without any security for the loan; that the Bank charged him interest on his loans for a number of years at the rate of 5% per annum, but as his account became more active the rate of interest had been reduced and for the past six or seven years he had been paying only 4%; that he transacted all of his business with the Bank through W. E. Abbas, with whom he was intimately acquainted. He further testified that Abbas came to his office in Cleburne on the night of April 1, 1946, by previous appointment, and in narrating the conversation which occurred at that time he

said: "Well, Mr. Abbas told me that the Bank had a client who needed more money than they were able to lend him, and that he would like for the Bank to charge my account with money over a period of time so that they could take care of this client's loans, and it would run somewhere from twenty-five to thirty thousand dollars. In the conversation he talked about how good the Bank had been to me in the past, and I told him, naturally, that I wasn't in the loan business but if it would be a help to the Bank that I would agree to it provided the Bank was responsible for it and would guarantee it, which he said they would. Q. Did he give you any idea about who that person was? A. He said it was a client who had REA contracts, and the money for that work, construction work, was slow, the government was slow in paying for it, and that is the reason for him needing more money than they could charge his line for. He didn't tell me his name. Q. He didn't tell you his name? A. No, sir. Q. Was there anything said about whether any interest would be paid? A. He said they would pay me 8% interest, yes, sir."

Thereafter, seven charges were made against the Grammer cotton account on dates and for amounts as follows: April 3, 1946, $7,032.67; April 20, 1946, $12,000; May 28, 1946, $6,500; June 6, 1946, $9,000; June 22, 1946, $5,500; October 19, 1946, $5,000; and January 4, 1950, $8,000. The first withdrawal of $7,032.67 made on April 3, 1946 was evidenced by a debit ticket for that amount against the Grammer cotton account which bore the notation: "Purchase of note. This charge made at the request of Walter Grammer on April 2, 1946." Following this typewritten information was the notation: "O K, W. E. A." in the handwriting of W. E. Abbas. With slight immaterial variations, each of the other six charges against the Grammer cotton account was evidenced by debit tickets bearing substantially the same legend as the first debit ticket which was dated April 3, 1946. Appellant testified that he received each of these debit tickets along with his cancelled checks at the end of each month during which they were charged to his account.

He further testified that he was sure he read these debit slips at the time he received them but that he did not pay any particular attention to them or to the manner in which they were written and that he never did at any time during Abbas' lifetime advise the Bank, in writing, that these withdrawals were unauthorized and that he never made any claim that such withdrawals were unauthorized until he filed this suit, and that he never mentioned his alleged agreement with Abbas about guaranteeing the repayment of withdrawals from his account to any officer or director of the Bank until after Abbas had died.

Offsetting, in part, the seven charges which were made against the Grammer account on the dates and for the amounts set forth in the preceding paragraph hereof were three credit items of replacement to the account on dates and for amounts as follows: June 27, 1946, $5,500; July 23, 1946, $9,000; and December 30, 1949, $8,000. The difference between the seven debits and the three credits to which we have referred amounts to $30,532.67. Appellant testified that on February 28, 1948, he told Abbas he thought he should have something in writing to evidence the Bank's liability to him for the charges that had been made against his account and thereupon Abbas, as Vice-President of the Bank, signed and delivered to him a letter reading as follows: "This letter is to confirm that you are carrying for us $30,532.05 in notes on the Lyman Walker Electric Co. account. This being carried for us to avoid an excess line at this bank. This lien is to pay you 8 per cent from date of notes. These notes being secured by assignment of contracts." Abbas died on or about April 30, 1951 under circumstances which indicated that he had committed suicide. After the death of Abbas two notes were found in his private lock box, each being signed by Lyman Walker, one being dated March 10, 1948, in the principal sum of $23,447.74 and the other being dated March 12, 1951 in the principal sum of $15,000. Each of these notes was endorsed on the back thereof in typewriting as follows: "The within note is hereby transferred to Walter Grammer by

W. E. Abbas and payment Guaranteed," such endorsement being signed: "W. E. Abbas." Both notes were in an envelope which bore the notation: "These notes are owned by Mr. Walter Grammer." The records of the Bank show that neither of these notes was ever owned by the Bank and that neither had ever been carried on the books of the Bank as any part of its assets. Walker testified by deposition that he received through Abbas the money for which these notes were given and admitted that he was liable to the owner for the amount due thereon.

■■ The undisputed evidence in the case shows that the Board of Directors of the Bank did not authorize Abbas to borrow money for the Bank in order to loan the same to any of its customers and the Board had no knowledge or notice until after the death of Abbas that the latter had borrowed or attempted to borrow any money for the Bank from Grammer, if he did so. The evidence shows that the Bank had approximately 5 million dollars on deposit which was available to it for the purpose of making lawful loans to its customers at all times material to this suit. Under the Bank's capital structure and the provisions of the national banking laws, 12 U.S.C.A., §§ 24 and 84, the maximum amount which the Bank could legally loan to Lyman Walker was $25,000. The evidence shows that Walker was indebted to the Bank in a sum in excess of that amount at all times material to this suit and that the Bank held Walker's notes for $36,000 at the time Abbas died.

Any attempt on our part to set forth even the substance of all the evidence adduced on the trial of this case would necessarily require this opinion to be extended far beyond the length of propriety. However, after duly considering the evidence as a whole in the light most favorable to the contentions of appellant, we have concluded that the trial court did not err in sustaining the Bank's motion for judgment or in entering judgment that appellant take nothing by his suit against the Bank.

Since Abbas had no authority, either express or implied, from the Board of Directors of the Bank to enter into the agreement to which appellant testified, we do not think the Bank is legally bound by such agreement or that, under the circumstances shown by the undisputed evidence before us, it is in any wise liable to appellant by reason thereof. Western National Bank v. Armstrong, 152 U.S. 346, 352, 14 S.Ct. 572, 574, 38 L.Ed. 470, 473; Holmes v. Uvalde National Bank, Tex.Civ.App., 222 S.W. 640- (er. ref.); Citizens National Bank v. Good Roads Gravel Co., Tex.Civ.App., 236 S.W. 153 (er. dis.); City National Bank v. Morgan, Tex.Civ.App., 258 S.W. 572; Carpenter v. Ferris National Bank, Tex.Civ. App., 60 S.W.2d 495. While the Board of Directors had the power to authorize Abbas to borrow money on behalf of the Bank for the purpose of conducting its banking business in a legitimate and lawful manner, the Directors were not legally empowered to borrow or authorize Abbas to borrow money from appellant in order that the Bank might make a loan of the same to Walker in violation of the National Banking Laws as embraced in Title 12 U.S.C.A. §§ 24 and 84.

■ We recognize that the Bank would be estopped in equity to deny the validity or the binding force and effect of the agreement sued upon if in fact it received and retained the benefits resulting from the charges which were made against the account of appellant, as alleged by him. Appellant attempted to prove such allegation by the introduction of a great maze of debit and credit entries in the books of the Bank and in the accounts of various customers of the Bank, but in our opinion the evidence as a whole was completely lacking in probative force to serve as the basis for any such legal inference. Although some of such entries tended to show that the Bank might have received some character of a temporary benefit from one or more of the charges against the account of appellant, any such apparent benefit to the Bank was merely incidental and transitory, was of no significance and nothing more than an illu-

sion and a snare, because the undisputed evidence shows conclusively, we think, that Walker, and Walker alone, actually received all the benefits of such charges to the extent of the full amount for which appellant sued in this case.

We do not deem it necessary to discuss any of the other legal questions involved on the appeal. From what has been said, it follows that in our opinion the judgment appealed from should be affirmed and it is accordingly so ordered.

Affirmed.