## HADLEY v. SMITH.

No. 7230.

Springfield Court of Appeals.

Missouri.

May 10, 1954.

C. A. Powell, Dexter, for appellant.

Briney & Welborn, Bloomfield, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Circuit Court of Stoddard County, Missouri, for $200 property damage recovered by plaintiff, W. C. Hadley, against defendant, O. W. Smith, as a result of an intersection automobile collision. Defendant appealed.

The petition is based upon both primary and humanitarian negligence. The amount of damage sought to be recovered was $300.

The answer contains a general denial, a plea that plaintiff is not the real party in interest and a plea of contributory negligence. It also contains a cross petition

in which defendant seeks damage for injury to his truck based upon primary negligence.

Most of the testimony is undisputed. It is admitted that the collision took place at the intersection of two country roads in Stoddard County; one running north and south and the other running east and west, terminating at the north-south road on the west. The north-south road was gravel and 15 feet wide but it was a one-lane road with but two-wheel tracks where one wheel runs on each side of the center of the road. The balance of the road on each side was loose gravel and soft shoulders. The road coming from the east and terminating at the intersection with the north-south road was a one-lane road about 12 or 13 feet wide. The country was hilly through which these roads passed and the east road, at the intersection, came up a sharp incline or hill into the north-south road. The intersection was so covered with bushes, trees and vines that neither driver could see the other driver approaching the intersection until the car reached the. intersection.

Plaintiff's testimony is that he was driving about 30 miles an hour, south on the north-south road, as he approached the intersection. He made this statement:

"Q. Could you see Mr. Smith approaching the intersection before he got into the intersection? A. No, sir. Not before he got completely in. * * *"

As to the collision, plaintiff gave this answer: "A. Yes, sir. And just as I approached this intersection I seen Mr. Smith coming out, and there wasn't a chance for me to stop or get out of his way until he plowed into my side and knocked me over against the, the far side of the road into the embankment. Hit me right in the side of the car, his first hit was just about 3 foot back on the left front fender. It caved it plumb in and shoved me over against the side.

"Q. Now, Mr. Hadley, where was your car with respect to this intersection at the time Mr. Smith's car struck your car. A. I just entered the. intersection. The nose

of my car was approximately to the center of the intersection. In other words, like you are going into the intersection, when you come out it hit me.

"Q. And he came from your left: is that correct? A. Yes, sir."

He testified the impact skidded his car over against the embankment on the west side of the road and the defendant's truck was knocked back east about 18 inches. He stated defendant's car was damaged on the left front end, beginning approximately at the frame.

Plaintiff gave this testimony:

"Q. You were about the middle of the road when you were hit: is that right? A. Yes, sir.

"Q. All right. A. The ruts followed that way, yes.

"Q. Yes. And you say from ditch to ditch that's about 15 feet: is that what you say? A. I would guess at that; yes, sir."

He testified his car was about six feet wide and it would leave about four and one-half feet on the east side of the road.

Defendant testified that he was traveling west on the east-west road, intending to make a right turn to go north on the north-south road. He gave this testimony:

"Q. Now as you were coming up this embankment to turn to go north, before you got to the intersection could you see to the north there that road? A. No, you couldn't see; there were an awful lot of growth. there, of vines growed up on the fence and up on the bushes.

"Q. How far did you have to go to, into the intersection, before you could see north? A. Well, by the time that you got up in the road you could see—by the time you got up in the edge of the road you could—."

He testified that he was ten or twelve feet from the center of the road when the cars collided. He gave this answer: "A. Well, about, about the time I seen him he

hit me." As to the position of the cars at the time of collision, he gave this answer: "A. I was about a 45 degree angle, turned north."

He then testified that he was about four feet from the center of the north-south road at the time of the collision; that is, his left front wheel. He stated he never got to the center of the road. Defendant offered testimony that there was a wheel mark in the gravel on the east side of the road to show that plaintiff's car was on the east about a foot before the collision and made a sharp turn to the right.

We think from the record that the jury was justified in finding that the north-south road was a two-wheel road or one-lane road, which was all the used part of the road so far as the public was concerned; that one wheel ran on each side of the center of the used part and that was about in the center of the road at the place of collision; that defendant was driving about thirty miles an hour and that his car was running in this used part of the road. We think the testimony is that outside of the used part of the road, the gravel was loose or soft and it would not have been practicable to drive one wheel out in that soft gravel. The evidence is undisputed that neither driver saw the other until they entered the intersection of the road.

Plaintiff says he was about fifteen feet from defendant's truck when he first saw it; that he applied his brakes but the accident took place so quickly that he does not know whether the brakes became effective or not before the collision.

Now the defendant came into the road from plaintiff's left. He said he did not see plaintiff's car until the time of the collision. Defendant states he was three or four feet from the center of the road.

The evidence is undisputed that plaintiff had purchased his car for $135 and had placed repairs thereon; that the seller had given him the certificate of title, signed, but not acknowledged, until after the accident on that day.

We think these facts fairly cover the issues presented.

In this opinion we will refer to appellant as defendant and to respondent as plaintiff, the positions occupied by the parties in the lower court.

Under defendant's first allegation of error, he complains that the trial court should have sustained defendant's motion for a directed verdict at the close of the evidence and sustained his motion for judgment in accordance with defendant's motion for directed verdict because plaintiff was guilty of contributory negligence as a matter of law, the evidence being insufficient to support the verdict on the petition.

Section 304.020(2) RSMo 1949, V.A. M.S., provides: "All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable".

In Moore v. Fitzpatrick, Mo.App., 31 S.W.2d 590, 591, the court held that where the plaintiff failed to comply with the provision of the statute above set out, he would be guilty of negligence. The law was stated thus:

" 'An operator of a motor vehicle shall have the right of way over an operator or driver of another motor vehicle who is approaching from the left of an intersecting highway and shall give the right of way to an operator or driver of a motor vehicle approaching from the right on an intersecting highway. The right of way shall mean the right to proceed when two or more vehicles will reach such intersection at approximately the same time.'

"Both these provisions of the statute are general, and neither makes any specific provisions applying to intersections like the one involved here where, by reason of cuts, embankments, and weeds, it was impossible for either driver to see the other before entering the intersection of the two roads. We do not think the fact that neither could see the other affects the rule of law, but it does affect the question of the duty of the respective parties. Although defendant had the right of way,

that did not release him from the duty to drive on the right-hand side of the road as the statute required. Although it was the duty of plaintiff to yield the right of way to another driver approaching upon his right, yet in complying with that provision of the statute in a situation like this, where he could not see a car approaching upon his right, he had the right to assume that, if one were approaching on his right, the driver would obey the law and be driving on the right-hand side of the road as he approached the intersection, and plaintiff must then use the highest degree of care to avoid a collision and with that end in view should proceed with the same care as a very prudent person would exercise under the same or similar circumstances."

The facts in this case show that the collision took place where Galloway Road intersects Campbell Street Road; that Campbell street was 40 feet wide from fence to fence, the traveled part being 24 feet wide and graveled. Plaintiff approaching Campbell street could not see traffic approaching from his right because of obstructions but slowed his car down so that he could stop within three or four feet. Had defendant been driving on the right side of the road, plaintiff's car could have been stopped before the collision and the court held that unless defendant was free of negligence on his part, he was not entitled to the rule of law which provides that where two automobiles approach an intersection at approximately the same time, the car on the right has the right to proceed and the car on the left must yield the right-of-way. It will be noted that the facts in the above case are entirely different from the facts in the case at bar.

We think the case is no authority to show plaintiff was guilty of negligence as a matter of law.

■ Long v. Binnicker, 228 Mo.App. 193, 63 S.W.2d 831 holds that the law giving the right-of-way to an automobile, reaching an intersection at the same time as the automobile to its left, applies only in favor of vehicles entering intersection from proper side of street. This same rule of law is declared in 42 C.J. 977; 60 C.J.S., Motor Vehicles, § 362.

In Moss v. Stevens, Mo.Sup., 247 S.W.2d 782, 785, the Supreme Court made this statement of law:

"The county road on which the accident occurred, according to plaintiffs' and defendant's witnesses, was a one lane highway with but two wheel tracks. Plaintiffs' witnesses estimated its width at 35 feet, but did not establish the width of the portion of this one-lane highway used for public travel nor how much of the traveled portion of the highway, if any, was to the east of defendant's truck as it passed the tractor. The requirement to operate motor vehicles 'as close to the right-hand side of the highway as practicable' § 304.020(2), RSMo 1949, V.A.M.S. does not receive a literal construction but has reference to the attending circumstances and to the usable or passable way. McGuire v. Steel Transport Co., 359 Mo. 1179, 225 S.W.2d 699, 702(3-5, 7); Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298, 303(13); Harmon v. Fowler Packing Co., 129 Mo.App. 715, 720, 108 S.W. 610, 611; Darnell v. Ransdall, Mo.App., 277 S.W. 372, 373(2); Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839, 845. * * *"

In Darnell v. Ransdall, Mo.App., 277 S.W. 372, the law is declared that where the statute requires the defendant, upon meeting of another automobile, to turn to the right of the highway, is meant the center of the traveled part of the highway.

■ Under the law as stated, the question of contributory negligence was one for the jury. Section 304.020(2) RSMo 1949, V.A.M.S., has reference to the attending circumstances and to the usable or passable way and the fact that plaintiff admitted that his car was in the one-lane, usable or passable way, does not convict him of negligence as a matter of law.

Under sub-section "B" of the first assignment of error defendant claims the trial court erred in not finding plaintiff guilty of negligence as a matter of law and that the evidence was not sufficient to support a

verdict in favor of plaintiff under defendant's counterclaim and in failing to sustain defendant's motion for a new trial on the counterclaim.

The decision in the first part of this allegation of error fully covers plaintiff's second contention and we find there is no merit in this contention.

In sub-section "C" of this allegation of error defendant complains of the giving of instruction numbered 5–P because the instruction authorized a verdict in favor of plaintiff if the jury found that both cars entered the intersection at approximately the same time without finding that plaintiff was driving to the right of the center of the graveled portion of the north-south road.

We hold there is no merit in this contention. The instruction covers the pleadings and evidence. Defendant's contention would make the instruction broader than the evidence.

Under allegation of error No. III, defendant complains of instruction 5–P given by the trial court because it did not require the jury to find plaintiff was on the right of the center of the highway at the time of the collision. Defendant says the instruction is in conflict with instruction No. 1–D, given by the court, which informed the jury that if plaintiff drove the automobile in such a manner that a portion of the same was on the left of the center of the traveled portion of the road, plaintiff was guilty of contributory negligence and was not entitled to recover on plaintiff's petition, and that the instruction was in conflict with instruction No. 5–D, given on behalf of the defendant, which told the jury that if plaintiff's automobile was driven in such a manner that a portion thereof was to the left of the center of the traveled portion of the highway, defendant was entitled to recover on his counterclaim.

To support this contention defendant cites West v. St. Louis Public Service Co., Mo.Sup., 236 S.W.2d 308, 313, in which the law is stated:

"In Mueller v. Schien, supra, we stated the basic rule applicable to the construction of instructions as follows [352 Mo. 180], 176 S.W.2d 449, loc. cit. 452: 'It is commonplace that "instructions to juries must be read and construed together and, as a whole, as stating the law for the guidance of the jury. They must not be conflicting, but may be supplementary to or explanatory of each other." Scott v. First Nat. Bank in St. Louis, en banc, 343 Mo. 77, 119 S.W.2d 929, 939, 940. When all the instructions, construed together, harmonize and clearly and specifically require the finding of all essential elements any indefinite, ambiguous and misleading language in a particular instruction is cured. * * *' "

In Raymond on Missouri Instructions, Vol. I, Sec. 95, the law is stated:

"Instructions must be consistent. Instructions which are inconsistent, contradictory, or conflicting should not be given and will usually constitute reversible error. * * *

"A correct instruction given for one party is not erroneous because it is in conflict with an incorrect instruction given for the adverse party. One may not be heard to complain of conflict between his own erroneous instruction and a proper one given on behalf of his adversary. * * *"

We think that instruction No. 5–P properly submitted all the essential elements required to be proven by plaintiff under the pleadings and evidence to recover.

We held, under point II of defendant's allegations of error, that the court properly refused to give instruction No. 8–D because there wasn't sufficient evidence to submit this instruction to the jury. We now hold that there was insufficient evidence to submit defendant's instruction No. 1–D.

This allegation of error also complains that plaintiff's instruction No. 5–P is in conflict with instruction No. 5–D given on behalf of defendant for the reason that the court told the jury in defendant's instruction that if plaintiff operated his car in such a manner that a portion thereof was

to the left of the center of the traveled portion of the highway, defendant was entitled to recover on his counterclaim.

The instructions are conflicting but this is the same objection decided above and we hold that there was not sufficient evidence to submit instruction 5–D and defendant cannot complain because he was not injured by the error made in his behalf.

Allegation of error No. IV complains that plaintiff is not the real party in interest in this case because he did not have title to the automobile.

It is admitted by the testimony that plaintiff had purchased the automobile for $135, had received possession thereof, together with the certificate of title, signed, but not acknowledged. The title, however, was completed the day of the collision.

Section 301.210 RSMo 1949, V.A.M.S., requires the seller to convey the title to the car by assignment on such form as the Director of Revenue provides.

■ It is the law that, in the transfer of a motor vehicle, the certificate of title must be assigned to the buyer and the signature of the seller must be acknowledged; that the certificate of title is then presented to the Director of Revenue and a new certificate of title issued to the purchaser.

The authorities cited by defendant all are to the effect that unless the seller conveyed the title to the car to the buyer herein by a certificate of title, signed and acknowledged, that the buyer received no interest which could be mortgaged or which could be insured. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, 979; Universal C. I. T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814; State ex rel. Connecticut Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; Cantrell v. Sheppard, Mo. App., 247 S.W.2d 872; Craig v. Rueseler Motor Co., Inc., Mo.App., 159 S.W.2d 374.

It is the settled law that where the purchaser does not receive title from the buyer he may rescind the contract and sue for the purchase price. Section 301.210 RSMo 1949, V.A.M.S.

However, the above authorities also show that the purchaser of the automobile may maintain replevin against a trespasser for taking possession without right.

The law is undisputed that at the time of this collision plaintiff did not have legal title to the automobile as was required by the law of this state. But he did have a special property interest in this automobile and the right to possession thereof. Under the statute he had such a right that if the seller failed and refused to properly convey the title to him, he could bring an action against the seller for the purchase price of such car upon tendering the car back to the seller in the same condition as when received. So it is clear to see that even though the legal title had not been conveyed to plaintiff, plaintiff did have a valuable property interest in this car.

In Rankin v. Wyatt, 335 Mo. 628, 73 S.W.2d 764, 768, 94 A.L.R. 941, the court, passing upon a question of law where the title had not been conveyed as provided by the statute, made this statement:

"* * * Defendant offered in evidence a certificate of title showing that A. J. Morris, husband of Josie, was the owner of the car. In rebuttal for the state, A. J. Morris testified that he bought the car and gave it to his wife. The assessor's records showed that Josie listed the car as her property. Of this evidence this court said [State v. Liston, 318 Mo. 1222, 2 S.W.2d 780, 783]: 'We think the proof was sufficient to establish Josie Morris' ownership of the automobile by gift from her husband. In any event, her undisputed possession, charge, and control of the automobile, at the time it was loaned by her to appellant, was sufficient proof of ownership as against appellant. State v. Montgomery, 181 Mo. 19, 79 S.W. 693, 67 L.R.A. 343, 2 Ann.Cas. 261; State v. Carroll, 214 Mo. 392, 113 S.W. 1051, 21 L.R.A.,N.S., 311; State v. Williams, Mo.Sup., 183 S.W. 308.'

"We see no reason why the same language as far as appropriate to the facts,

here should not be said of defendant, who wrongfully converted to his own use the car in suit.".

We find no cases in Missouri deciding the point in issue here and the parties hereto have failed to direct our attention to any authority in point.

However, we hold that the plaintiff had a property interest in this car, even though he had no title. He had the right to possession. He had a right under the statute to return the car in as good a condition as when received, to the seller, and recover the purchase price or, we think, he had a right, in equity, to compel the seller to convey title. The defendant is in no position to question the right of plaintiff to recover in this action for injuries caused by his wrong to such property rights as plaintiff did hold. A judgment in favor of plaintiff would bar any action by the title holder under the facts in this case.

Judgment affirmed.

BLAIR and STONE, JJ., concur.