FITZGIBBON DISCOUNT CORPORATION,
a Corporation, (Plaintiff) Appellant,

v.

Otto ROBERTS, (Defendant) Respondent.

No. 29229.

St. Louis Court of Appeals. Missouri.

Nov. 15, 1955.

Morris A. Shenker, William R. O'Toole, St. Louis, for appellant.

A. Lowell Morris, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action in replevin brought by Fitzgibbon Discount Corporation to recover possession of a Buick automobile from defendant, Otto Roberts. A trial before the court, without a jury, resulted in a finding and judgment in favor of defendant. From this judgment, plaintiff has appealed.

From the transcript, we find the facts to be as follows:

On August 12, 1952, defendant Otto Roberts, was the owner of a 1947 Buick automobile. On that date defendant delivered the car to Fred Bayles for the purpose of having Bayles sell the car for him. Fred Bayles was an automobile dealer doing business under the trade name of Esquire Motor Company. Upon the delivery of the

car defendant was given a receipt signed by Fred Bayles which read as follows:

"August 12, 1952.

"Received from Otto Roberts one 1947 Buick special sedan, motor #473-39084 and title #4005833—on consignment to net Mr. Roberts $700.00 if sold by Esquire Motors."

Bayles then requested defendant to deliver to him the certificate of title on the car, stating that if he would do so it would save him trouble and inconvenience in the event of a sale. Defendant did not have the title with him at the time—it was at his home. Bayles then drove Roberts to his home and upon their arrival there Roberts, after signing his name in the blank assignment form on the back of the certificate, delivered the certificate of title to Bayles. Roberts did not acknowledge same at the time, and no assignee was named in the form, this space being left blank. The form for acknowledgment was not filled out, and no notary's seal was attached.

Plaintiff, Fitzgibbon Discount Corporation, was engaged in the business of discounting automobile paper, loaning money, and floor planning automobiles for dealers. It had had dealings of this nature with Bayles. Its president was J. Emmett Fitzgibbon. Mr. Fitzgibbon knew Bayles in August, 1952, by reason of these transactions, and knew that he was doing business under the trade name of Esquire Motor Company.

On August 19, 1952, Bayles made application to plaintiff for a loan of $1,000. The application was accepted, and as security for said loan Bayles executed a mortgage on two automobiles, one of which was the car which had been left with him by defendant Roberts. This mortgage was filed in the Recorder's office on August 22, 1952. The note which the mortgage secured was made payable thirty days from its date. Bayles also at the time delivered to plaintiff the certificate of title to the Roberts' car. When the certificate of title was presented

to plaintiff on the occasion in question the assignment form was filled out showing Esquire Motor Company as assignee. The form of acknowledgment was also completed to show that it was notarized by Fred Bayles. Said assignment was dated August 12, 1952. Mr. Fitzgibbon handled the transaction with reference to the loan for plaintiff.

The automobile remained in the possession of Bayles until October 11, 1952, when defendant took possession of it, after telling Bayles that he did not want to leave it with him any longer. Bayles voluntarily surrendered possession of the car. Defendant at the time knew nothing of the transactions with respect to the car which were had between plaintiff and Bayles. Defendant requested Bayles to give him the certificate of title. In response, Bayles said that the title was at his home where it was lodged in a safe and that he would mail it to defendant so that he would get it the following Monday. Bayles did not keep his promise in this respect. Thereafter, defendant attempted several times to call Bayles on the telephone but was never able to contact him. Each time defendant would call he would be informed by the person answering the telephone that Bayles was out, out of town, or that they did not know where he was. Defendant never did get to talk with Bayles. Defendant then went to the police and was advised to make application for a duplicate certificate of title. Defendant made such application and was issued a new certificare on November 19, 1952. After making such application, and before the new certificate was issued, defendant was served with the writ in this case.

The findings of fact and conclusions of law made by the trial court are set out in a memorandum filed in said cause. The same is as follows:

"The evidence shows that defendant Otto Roberts delivered possession of the car and the certificate of title to Fred Bayles, a used car dealer, for the purpose of selling same and delivering title thereto. Defendant certainly put

Bayles in a position to defraud other persons but the certificate of title when presented to plaintiff was acknowledged by Fred Bayles.

"The grantee named was the Esquire Motors which was known to plaintiff to be the name used by Fred Bayles. In view of this, it appears to the Court that Fred Bayles (Esquire Motors) received no interest which could be mortgaged. Pearl v. Interstate Securities Co. [357 Mo. 160], 206 S.W.2d 975; Hadley v. Smith [Mo.App.], 268 S.W. 2d 444, l. c. 450; Universal C. I. T. Credit Corp. v. Griffith Motor Co. [Mo App.], 243 S.W.2d 814, 1 Am.Jur. 334–335, 1 C.J.S. [Acknowledgments, § 53, p.] 823."

Appellant's first point is that the court erred in finding that plaintiff acquired no interest in the automobile in question. There is no merit to this contention.

■ It is clear from the facts shown by the record that Bayles acquired no rights in the car by virtue of the attempted assignment by defendant of the title certificate at the time the car was delivered to Bayles. There was no contract of sale entered into at any time between Bayles and the defendant, and no intent on the part of defendant to vest title to the car in Bayles. On the contrary, the evidence is clear that the car was delivered to Bayles in order that the latter might effect a sale of it as agent of the defendant. Furthermore, Bayles received only an unacknowledged assignment, and this was not sufficient to vest in him the legal title. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975; Universal C. I. T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814; Wills v. Shepherd, Mo.App., 231 S.W.2d 843; Peper v. American Exchange National Bank in St. Louis, 357 Mo. 652, 210 S.W.2d 41.

■ Nor did Bayles acquire title by thereafter inserting the name of Esquire Motors as assignee in the assignment form. Esquire Motors was a trade name under which Bayles did business. He would only have authority to complete the assignment form in such manner if he were the purchaser. That Bayles did not purchase the car is clear. But even had he intended to purchase the car at the time he completed the assignment form, title would not have passed for the reason that he was disqualified to act as notary in taking the acknowledgment of defendant's signature to the assignment, by reason of his beneficial interest in the transaction. 1 C.J.S., Acknowledgments, §§ 52–53, p. 821; 1 Am. Jur., Acknowledgments, Secs. 52–53, pages 334–335; Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975.

But appellant contends that even though title to the car remained in defendant, the latter, by his own conduct, was estopped from asserting his title, as against plaintiff, who, without notice of any defects in its mortgagor's title, was in the position of a bona fide purchaser.

Under the facts as we find them from the record, plaintiff is in no position to invoke the doctrine of estoppel.

J. Emmett Fitzgibbon was president of the plaintiff company and testified on behalf of plaintiff. While on the stand he testified concerning the nature of the business carried on by Bayles. He then gave the following testimony:

"Q. Did you have occasion to have any business transaction with him on or about August 19, 1952? A. Yes, I did."

The witness then testified that his company had theretofore been discounting automobile paper and floor planning automobiles for Bayles. He then gave the following testimony:

"Q. Did you have such a transaction with Mr. Bayles in August of '52? A. I did."

The witness then identified the note and mortgage involved in this suit, together with the check issued to Bayles on the occasion. He also identified the certificate

of title and testified that it was received from Fred Bayles at the time the loan was made. It thus appears from the evidence that Mr. Fitzgibbon handled the loan transaction for the plaintiff.

Mr. Fitzgibbon further testified that he had been president of plaintiff company for nine years and was with that company in 1952. He then gave the following testimony:

"Q. Let me ask you, sir, if during that time before that, prior to that, you knew a man by the name of Fred Bayles? A. Yes, sir.

"Q. And was he an automobile dealer to your knowledge? A. Yes, sir.

"Q. He do business under any firm name or trade name? A. I believe it was the Esquire Motor.

"The Court: The what?

"The witness: Esquire Motor Company."

■ The only reasonable inference to be drawn from the foregoing testimony is that Mr. Fitzgibbon, president of plaintiff company, handled the transaction with reference to the loan involving defendant's car, and that he knew at the time that Esquire Motors was merely a trade name under which Fred Bayles carried on his business as a dealer in automobiles. With this knowledge he accepted the certificate of title from Bayles which showed on its face that it was assigned to Esquire Motors, and carried an acknowledgment by Fred Bayles as notary. This was sufficient to put Fitzgibbon on notice that the title asserted by Bayles was defective, and for that reason plaintiff is in no position to claim the rights of an innocent party under the doctrine of estoppel.

The judgment is affirmed.

MATTHES, J. and SAM C. BLAIR, Special Judge, concur.