ALLSTATE INSURANCE COMPANY, a corporation, Plaintiff-Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY, a corporation, J. H. Lynn and J. H. Moore, d/b/a Lynn-Moore Pontiac Sales, Defendants-Respondents.

No. 7573.

Springfield Court of Appeals.

Missouri.

Feb. 14, 1958.

Hyde & Purcell, George R. Wilhoit, Jr., Poplar Bluff, for plaintiff-appellant.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for defendants-respondents.

RUARK, Judge.

In this case two insurance companies fight over the unappetizing bone of which is liable to indemnify against a damage suit. Plaintiff-appellant, Allstate Insurance Company, has sued defendant-respondent Hartford Accident & Indemnity Company to recover the sum of $5,078.06, representing the amount paid in satisfaction of a judgment and $1,480.25 expended for attorney's fees and incidental expense in defending the suit which culminated in such judgment. Allstate was denied relief by the court which tried the case below and has appealed.

### The Facts.

Prior to the occurrence here mentioned, Lynn-Moore Pontiac Sales was an automobile dealer at Dexter, Missouri. It had at some time previous sold to one Akins a 1942 Ford on which it took back a mortgage to secure part of the purchase price. Certificate of title was obtained in the name of Akins, but Lynn-Moore retained possession of such certificate as additional security for the payment of its lien. Akins, however, did not assign this certificate.

On February 19, 1954, Akins went to Lynn-Moore's place of business and there entered upon a transaction respecting a 1946 Pontiac which was one of Lynn-Moore's stock of cars kept on its lot and held for sale or trade. This 1946 Pontiac had been acquired from a Missouri resident. Akins entered into negotiation with one Brown, the salesman in charge (Brown also happened to be Akins's son-in-law), and the upshot was that Akins agreed to trade in his 1942 Ford, at an allowance of $100, to pay $127 in cash, and to give a chattel mortgage to secure a total balance of $283.-92. Having so agreed, Akins signed a mortgage in ordinary form pledging the 1946 Pontiac as security for the unpaid balance. *No other papers were executed or delivered at that time.* The Pontiac required some tune-up work and remained at the garage of the dealer. Akins drove his Ford on home. The Missouri certificate of title (for either of the vehicles) was not signed, acknowledged, and delivered at the dealer's office, nor did Lynn-Moore sign (as mortgagee) the newly executed mortgage which Akins had given on the Pontiac. The owner-dealer, Mr. Lynn, was absent. He does not recall whether he signed the certificate

of title to the Pontiac that day or the next morning, but the evidence is clear that such certificate was not delivered to Akins until the next morning. Neither was the $127 cash difference paid at the office of the dealer. Akins says that Brown, the salesman son-in-law, "picked it up" from his (Akins') wife later, but he does not know whether it was that day or the next morning. Brown says that Lynn signed (on the seller-mortgagee's line for signature) the chattel mortgage either that night or the next morning, and that either that night or the next morning he took the certificate of title (for the Ford) to Akins and procured his assignment of such title. Since the parties are positive that the Pontiac certificate was not delivered until the next morning, we think a fair conclusion to be drawn from all the evidence is that Brown, who was a notary, took the Pontiac certificate to Akins the next morning and at the same time secured Akins's assignment of the certificate of title to the Ford and collected the $127 down payment. At any rate, the title to the vehicles had not exchanged hands prior to the occurrences from which the liability involved in this case arose.

Now let us go back to the physical possession of the automobiles: The transaction at the garage had occurred about 4:00 p. m. At some time between 5:00 and 6:00, the work on the Pontiac being completed, Brown drove it out and delivered it to Akins, got the Ford, and drove it off. Akins says no papers were delivered to him, nor did he sign any at this exchange of possession. Brown says no papers were delivered except possibly an invoice. Within approximately fifteen minutes after delivery of the Pontiac, Akins had put himself, his wife, his daughter, and a neighbor girl in the newly possessed Pontiac, was driving up the road, and was involved in a collision with a car owned by Phillips. Paul and Joyce Phillips sued Akins in Count I for $650 property damage to Paul, in Count II for $1,000 personal injuries to Paul, in Count III for $5,000 medical expense and loss of consortium to Paul, and in Count IV

for $10,000 injuries to Joyce; and eventually they got judgment for $5,078.06.

At the time of these doings Akins had liability coverage with plaintiff-appellant Allstate. The policy provided for indemnity in connection with the operation of the 1942 Ford and of substitute non-owned cars, but further provided that in respect to any non-owned automobile the coverage should be excess insurance over any other collectible liability insurance available to the insured. The policy contained subrogation provisions.

Lynn-Moore had coverage with defendant-respondent Hartford in the amount of $15,000 for each person and $30,000 for each accident, plus $5,000 property damage. Under the Definition of Hazards the policy covered "the ownership, maintenance or use of the premises for the purpose of an automobile dealer * * * and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations." Under its Definition of Insured, "the unqualified 'Insured' includes the Named Insured and also includes * * any person while using an automobile covered by this policy * * *, provided the actual use of the automobile is by the Named Insured or *with his permission.*"

The marrow of the bone in controversy is whether or not Akins at the time of the collision with Phillips was driving the Pontiac with permission of the dealer, Lynn-Moore. If so, Lynn-Moore's insurer, Hartford, is primarily liable, and Akins' insurer, Allstate, is liable only for the excess beyond such coverage, which excess does not exist in this case. (At least there is no contention to the contrary in respect to the legal effect of the policies.) Allstate contends that no sale had been consummated under the Missouri law and that consequently Akins was driving the Pontiac with permission of Lynn-Moore. Hartford contends that Akins was driving the Pontiac by virtue of his own right and authority as purchaser and mortgagor entitled to possession.

## Opinion.

■ The word "permission" as used in an omnibus clause has a flexible meaning depending upon the sense in which it is used. Under the definitions ordinarily given, it carries with it the necessary aspect of the right, power, or privilege to give or to withhold the grant of license embodied in the term. Thus one who has the right and power to use engages in such use by virtue of his own right and not by permission of another.[1] Hence it is held that user by conditional vendee who has acquired the possession and is the real and beneficial owner is by virtue of his own right and not by permission of the vendor, even though the legal title is withheld by the vendor; this on the theory that the conditional vendor has no right to control the use even though he may be the legal owner.[2] It is, however, significant of these cases so holding that the expression frequently used is "after consummation of the sale" the use is by virtue of ownership. In those cases the consummation of the transaction was not prevented by the operation of statutes relating to the sale of motor vehicles.[3]

In other instances the word "permission" has a broader meaning. Thus in Royal Indemnity Co. v. Markley, 116 Colo. 84, 178 P.2d 672, 673, where the user was under a written lease for a period of not less than six months, which provided that the leased vehicle "should be under the complete control of the lessee," the court discussed the Latin origin of the word and said, 178 P.2d loc. cit. 674:

"The most that can be said for insurer's contention is that the word 'permission' might be used in the narrow sense of authority terminable at will, or that it might be used in the more inclusive sense of authority of contractual or legal basis. Such being the case, under common rules of construction as applies to an insurance policy, it must be construed against the company and in favor of the insured."

In Switzer v. Merchants Mutual Casualty Company, 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904, 907, a dealer sold a car to a purchaser and the parties failed to comply with the Vehicle and Traffic Law in respect to transfer and registration of motor vehicles. The dealer loaned the buyer a set of dealer's plates. The court said that "his [the dealer's] act in lending the license plates was responsible for making possible the use of the truck by [the buyer] after the sale. That act constituted permission * * *", and the dealer's insurer was held.

In Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, an employee who had obtained a garage check to use his employer's car on the employer's business returned the car to the garage and *thereafter* wrongfully and without authority took the garage check back and got possession of and used the car for his own ends. He was held to be driving with "permission" of the employer under the definition of the omnibus clause.

In Votaw v. Farmers Automobile Inter-Insurance Exchange, 15 Cal.2d 24, 97 P.2d

1. 45 C.J.S. Insurance § 829(2) (b)bb, p. 900, 5 Am.Jur., Automobiles, sec. 535, p. 806; 32 Words and Phrases, Permission, p. 210; Virginia Auto Mut. Ins. Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377; Didlake v. Standard Ins. Co., 10 Cir., 195 F.2d 247, 33 A.L.R.2d 941; Mann v. Des Moines R. Co., 232 Iowa 1049, 7 N.W.2d 45, 53; see Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W.2d 295.

2. Annotation, 36 A.L.R.2d 673; Olin Mathieson Chemical Corp. v. Southwest Casualty Co., D.C.Ark., 149 F.Supp.

600; Whitney v. Employers' Indemnity Corporation, 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495; Farm Bureau Mut. Ins. Co. v. Emmons, 122 Ind.App. 440, 104 N.E.2d 413; Home Indemnity Co. v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668; Fagg v. Massachusetts Bonding & Ins. Co., 142 Or. 358, 19 P. 2d 413; Virginia Auto Mut. Ins. Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377.

3. See the distinction made in Olin Mathieson Chemical Corp. v. Southwest Casualty Co., D.C.Ark., 149 F.Supp. 600.

958, 126 A.L.R. 538, it was held that one of the purposes of the omnibus clause was to broaden the terms of the policy to meet present automobile driving conditions and to protect the insured against any liability under any Owner's Responsibility Laws, and that where the motor vehicle code had not been complied with (although the car had been sold and possession delivered), the car was being operated with the consent of the owner.

It would seem that where the sale of a motor vehicle is void, or cannot be consummated except by compliance with certain mandatory provisions of the statute, the user by the buyer at an attempted sale is by permission and consent of the vendor. "The result of the failure of a vendor * * * to meet the requirements of the Vehicle Code is that, while as between him and his vendee, the latter becomes the owner of the vehicle, as to third parties who are injured by the vehicle still registered to him as owner, the vendor remains the owner and the vendee is using the vehicle with his permission." Harbor Insurance Company v. Paulson, 135 Cal.App.2d 22, 286 P.2d 870, 874; Garlick v. McFarland, 159 Ohio St. 539, 113 N.E.2d 92; see Traders & General Ins. Co. v. Pacific Employers Ins. Co., 130 Cal.App.2d 158, 278 P.2d 493, and Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820. The facts in the Harbor Insurance Company case, supra, are somewhat similar to the facts in this case.

Turning now to the Missouri motor vehicle law, we find that under section 301.210 RSMo 1949, V.A.M.S., it is unlawful to buy or sell any motor vehicle registered in this state unless "at the time of the delivery" there shall pass between the parties a certificate of title, and the sale without such assignment "shall be fraudulent and void." The provisions of this act are essentially a police regulation of the highest type and absolute technical compliance is necessary. Such provisions are rigidly enforced and there are no exceptions to conform to intentions.[4] Unless and until the assignment of the certificate of title is filled in, acknowledged, and delivered to the purchaser, no title passes.[5] And the buyer acquires no right of possession and user *against the seller*, who may repudiate and tender back the consideration. Riss & Co. v. Wallace, 350 Mo. 1208, 171 S.W.2d 641, 151 A.L.R. 512; Quinn v. Gehlert, Mo. App., 291 S.W. 138; see Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W. 2d 975(2); Wills v. Shepherd, Mo.App., 231 S.W.2d 843; Universal C. I. T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814.[6]

In construing this policy, as in any contract, we should of course ascertain and give effect to the intention of the parties, and we should be careful not to give it a meaning which extends or restricts the coverage beyond the contemplation of such parties.[7] The business of the insured was

---

4. Kelso v. Kelso, Mo., 306 S.W.2d 534; Mackie and Williams Food Stores, Inc. v. Anchor Casualty Company, 8 Cir., 216 F.2d 317; Robertson v. Snider, Mo. App., 63 S.W.2d 508; Robinson v. Poole, Mo.App., 232 S.W.2d 807.

5. Kesinger v. Burtrum, Mo.App., 295 S.W. 2d 605; Mathes v. Westchester Fire Ins. Co., Mo.App., 6 S.W.2d 66; Robertson v. Central Manufacturers' Mut. Ins. Co., 239 Mo.App. 1169, 207 S.W.2d 59; Anderson v. Arnold-Strong Motor Co., 229 Mo.App. 1170, 88 S.W.2d 419.

6. That the buyer has "some interest" and the right in certain instances to resort to a court of equity to enforce or complete an executory contract of sale of a motor vehicle by assignment of the

certificate we have no doubt. Peper v. American Exchange Nat. Bank in St. Louis, 357 Mo. 652, 210 S.W.2d 41(7); Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975 (syllabus 15); Kusnetzky v. Security Ins. Co., 313 Mo. 143, 281 S.W. 47, 51, 45 A.L.R. 189; Hadley v. Smith, Mo.App., 268 S.W. 2d 444, 451; see Schroeder v. Zykan, Mo. App., 255 S.W.2d 105; but see also Robertson v. Central Manufacturers' Mut. Ins. Co., 239 Mo.App. 1169, 207 S.W. 2d 59, loc. cit. 61.

7. Bird v. St. Paul Fire & Marine Ins. Co., 224 N.Y. 47, 120 N.E. 86, 13 A.L.R. 875; United States v. Springfield Fire & Marine Ins. Co., 8 Cir., 207 F.2d 935 (3); Perkins v. Perkins, Mo.App., 284

that of "Pontiac Sales." The hazard defined was "the ownership, maintenance or use of the premises for the purpose of an automobile dealer * * * and the ownership, maintenance or use of any automobile in connection with the above defined operations * * *." It is common knowledge that it is the practice of dealers to permit the driving of an automobile by prospective purchasers, especially by those customers whose purchase is in the making, and that such dealers, as a part of their service to their customers, permit the use of their dealer's plates and the use of the automobile after the sale has been agreed upon but before the formalities of title transfer have been processed and completed. "There is no reason to doubt that the parties contemplated that under such circumstances the policy would protect not only [the seller] as the named assured, but also [the buyer] who was operating the automobile with the consent of the named assured." Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820, 824; Switzer v. Merchants Mutual Casualty Company, 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904, loc. cit. 906.

 If the language of the policy is reasonably susceptible of two interpretations, then a construction which sustains the claim of the insured will be adopted, since the language employed is that of the insurer.[8] As stated previously, the meaning of the term "permission" in an omnibus clause has been the subject of conflicting opinions. Since we assume that *all* courts adopt a reasonable construction, the conflict is of itself indicative that the word as so used is susceptible of at least two reasonable interpretations, one of which extends the coverage to the situation at hand. If the insurer wished to narrow the coverage extended in its omnibus clause, it had only to so word it.

 If we view the transaction between Akins and Lynn-Moore as an attempt to make a completed sale, then the transaction was wholly and completely void, because the law so made it. If we regard it as an executory contract to complete a sale in the future (as we think we must so view it, because we will not presume that the parties intended to do an illegal and unlawful act), then the user of the car pending completion was by consent and permission of the seller. Lynn-Moore did not *have* to deliver the automobile to Akins. It was under no obligation to do so until the sale had been consummated in fact and in law by transfer of title. It did so in the exercise of a right and power which it had the right to give or to withhold. The delivery under the circumstances shown here carried with it, at the instant of the delivery, the implied permission to use and operate the automobile.

 Respondent argues valiantly that sec. 301.010(19) RSMo 1949, V.A.M.S., as re-enacted Laws of 1951, p. 695, contemplates a separation of the legal title from the right of user. This section, entitled "Definitions," defines the term "owner" as any person who holds legal title of a motor vehicle, or, in the event the vehicle is subject to an agreement for conditional sale, lease, or mortgage, with right of possession, then such conditional vendee, lessee or mortgager shall be deemed the owner. Respondent says that since Akins was "mortgagor" he should be deemed the owner in this transaction. We have no doubt that in a proper transaction the legal title of a motor vehicle may be separated from the right of possession and, for that matter, the right of control of such vehicle. We do not, however, believe that this general definitions statute was intended to destroy the structure of regulations in regard to sale,

---

S.W.2d 603; Hogue v. Wurdack, Mo. App., 298 S.W.2d 492; Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S.W.2d 108.

8. Hawkeye Casualty Co. v. Rose, 8 Cir., 181 F.2d 157; Schmidt v. Utilities Ins.

Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088; Freese v. St. Paul Mercury Indemnity Co., Mo.App., 252 S.W.2d 653, 656; Ash-Grove Lime & Portland Cement Co. v. Southern Surety Co., 225 Mo.App. 712, 39 S.W.2d 434, 439.

transfer, and registration of motor vehicles. Without pursuing that subject further, we suggest that the transaction here involved was not one by which the parties were attempting to separate legal title from the right of possession. It was plainly and simply a sale of a motor vehicle which had not been consummated by delivery of certificate of title and hence was void. Because the sale was void, the chattel mortgage was void.[9] Furthermore, at the time of the delivery of the car and at the time of the accident it appears that the owner, Lynn-Moore, had not signed the chattel mortgage, which, by its words, gave Akins the right of possession. The instrument was unilateral. Akins could not lift himself by his own shoe strings and thus acquire a right (the right of possession and control) which he did not have prior to his unilateral execution of the instrument. We are of the opinion that Akins was driving with the permission of Lynn-Moore as that term must be construed and that consequently the judgment must be reversed.

■■■■ We must render "such judgment as such court ought to have given" (section 512.160 RSMo 1949, V.A.M.S.) in respect to the amount. The claim includes expenditures of $1,408.25 for attorney's fees and expense of defending the damage suit brought by Phillips against Akins. Six hundred dollars of this amount was for attorney's fees incurred in an unsuccessful attempt to bring Hartford into the case as a third party defendant. Assuming that such third party procedure was proper in that case,[10] the purpose to be accomplished could have been only to have determined Hartford's policy liability to Akins, not to defend Akins against Phillips' claims. It was analogous to an action for declaratory judgment, in respect to policy liability, as between Hartford and Akins. Ordinarily attorney's fees are recoverable only when called for by contract or provided by statute, or as an item of damage when their incurrence is necessary to protect a wronged party from the injurious effect of the acts of a wrongdoer, or, occasionally, when a court of equity finds it necessary to adjudge them in order to balance benefits.[11] This third party proceeding did not fall into one of those classes.[12]

The judgment of the circuit court is reversed and it is ordered that plaintiff have and recover of and from the defendant Hartford Accident & Indemnity Company the sum of $5,958.31 and costs of this case.

STONE, P. J., and McDOWELL, J., concur.

9. Fitzgibbon Discount Corporation v. Roberts, Mo.App., 283 S.W.2d 906, 908; Isaacson v. Van Gundy, Mo.App., 48 S.W. 2d 208; Robertson v. Snider, Mo.App., 63 S.W.2d 508; Universal C. I. T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814, 817.

10. See section 507.080 RSMo 1949, V.A. M.S.; Rule 14, Federal Rules of Civil Procedure, Title 28 U.S.C.A.; Jordan v. Stephens, D.C.W.D.Mo., 7 F.R.D. 140; Knapp v. Hankins, D.C.E.D.Ill., 106 F. Supp. 43, 48; Jenkins v. Black & White Cab Co., D.C., 15 F.R.D. 5; Barron and Holtzoff, Federal Practice and Procedure, vol. 1, sec. 426, p. 851, notes 48–52; State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S.W.2d 127; Hipp v. Kansas City Public Service Co., Mo.App., 237 S.W.2d 928.

11. Willis v. American National Life Ins. Co., Mo.App., 287 S.W.2d 98(16); Munday v. Thielecke, Mo., 290 S.W.2d 88 (6); State ex rel. Moore v. Morant, Mo. App., 266 S.W.2d 723; Simmons v. Friday, 8 Cir., 190 F.2d 849.

12. See Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441, 445; O'Morrow v. Borad, 27 Cal.2d 794, 167 P.2d 483, 163 A.L.R. 894; Great American Indemnity Co. v. Audlane Realty Corp., 163 Misc. 301, 296 N.Y.S. 655; Maryland Casualty Co. v. Sammons, 63 Ga.App. 323, 11 S.E.2d 89; Travelers Ins. Co. v. Reed Co., Tex.Civ.App., 135 S.W.2d 611, 616; Robinson v. United States Fidelity & Guaranty Co., 159 Miss. 14, 131 So. 541; see Appleman on Insurance, vol. 8, sec. 4691.